[No. A068031. First Dist., Div. Two. Oct. 20, 1997.]

ANTONIO M. GARCIA, Plaintiff and Respondent, v.
VIVEK HEJMADI et al., Defendants and Appellants.

676

## COUNSEL

Peter R. Chernik for Defendants and Appellants.

Livingston & Weiss and Dennis L. Livingston for Plaintiff and Respondent.

## OPINION

**LAMBDEN, J.**—Antonio M. Garcia brought this action against Vivek Hejmadi and Dyna-Tel, Inc. (Dyna-Tel), a New Jersey corporation, for declaratory relief, dissolution, accounting and other relief regarding, at root, a dispute over Dyna-Tel's ownership. This appeal by Hejmadi follows a 10-day court trial which yielded judgment for Garcia and a lengthy statement of decision.

### BACKGROUND

The case history is complex. We briefly recite it for context, resorting to the statement of decision. Garcia was a shareholder and officer of Chemical Industries of the Philippines (Chemphil) when in 1979 he entered a joint venture agreement for the Philippine manufacture and distribution of electric motors for export, principally to the United States. This led to the purchase of a plant from Marco Electric Motors (Marco) and the formation of Chemark Electric Motors (Chemark), a joint venture of Marco and another of Garcia's companies, Dynetics, Inc. (Dynetics). In late 1981 and early 1982, Garcia formed Dyna-Tel as a marketing-company outgrowth of that venture, selecting Hejmadi—a financial manager for another of his companies, Intel—as his representative to head the operation.

Paul Fine, a principal in Marco, undertook to form Dyna-Tel at Garcia's request and utilized the services of Henry Fein, an attorney from a New Jersey law firm. Fein had a certificate of incorporation filed on February 17, 1982. The designated directors were Fine, Garcia, Hejmadi and Murray Traub, with Garcia designated chairman of the board. An initial 1,000 shares were to be issued, 500 to Garcia and 500 to Traub, but Fein never completed the corporate organization or issued any stock. Garcia capitalized and secured financing and credit for Dyna-Tel. It was disputed at trial what financing, if any, Hejmadi contributed, and the court found he had contributed none.

Concern eventually arose that funds collected by Dyna-Tel were not being remitted to Chemark, and unsuccessful attempts to get an accounting from Hejmadi led to acrimony and Hejmadi claiming to be the actual owner of Dyna-Tel. A standoff resulted, with threats and inducements for Hejmadi to relinquish his position and reveal the funds, and Chemark decided in late

1983 to capitalize and form New York marketing company Advance Motor Technology Corporation (Amtek) to take over Dyna-Tel's functions.

Pressure from creditors mounted, and in 1984 Chemark and Garcia filed suit in federal district court in San Francisco against Dyna-Tel and Hejmadi, for embezzlement and recovery of the missing funds. Meanwhile, Vicente Chuidián, a sometime business partner of Garcia's, assumed control of Amtek and began engaging Chemark and Garcia in other litigation, including a lawsuit in Chicago over $611,000 owed to Chemark (the Lakewood receivable). A settlement reached in the San Francisco lawsuit involved an assignment to Chemark of Dyna-Tel's claims to the Lakewood receivable.

The parties executed a "Release and Assignment" (release) and "Settlement Agreement and Release" (settlement agreement), both dated September 22, 1985, which ended the 1984 litigation and required certain performance obligations. By October, Garcia formed Chemark International, Ltd. (Chemark International) and stood ready to contribute $75,000 toward its capitalization. Hejmadi, however, did not contribute his own required $75,000 share.

In November 1986, Dyna-Tel brought suit against Lakewood (the Lakewood litigation), seeking payment of the same receivable previously at issue, and now also the subject of the release and settlement agreement. Hejmadi argued in that case that those documents were null and void. He prevailed, and a September 1988 judgment for Dyna-Tel was ultimately affirmed by the Seventh Circuit Court of Appeals in October 1991.

Garcia brought this suit in November 1991, seeking dissolution and declaratory relief, among other things. By then, Dyna-Tel had not been engaged in active trade or business since 1984 and its only assets were funds, held in federal court, representing the net proceeds obtained through judgment in the Lakewood litigation. A key position asserted by Hejmadi in this action was that, at a March 1982 organizational meeting for Dyna-Tel, he and another Dyna-Tel director, Antonio Telesca, authorized the issuance of Dyna-Tel stock to himself.

Trial before the Honorable Thomas J. Dandurand began August 1, 1994, and judgment for Garcia was filed on November 2, 1994, the court declaring Garcia sole owner of Dyna-Tel, directing all funds then held in the court registry ($545,823.90 plus interest) released to him and authorizing corporate dissolution. Defendants timely appeal following notice of entry of the ensuing judgment.

## APPEAL

Defendants in their opening brief claim reversible error in that: Garcia lacked shareholder standing and the necessary grounds to seek involuntary

dissolution; he also lacked standing as a real party in interest; the settlement agreement barred this action; the statute of limitations also barred it; and there was a valid issuance of stock to Hejmadi in 1982. In a supplemental brief, defendants claim a pretrial grant of summary judgment in their favor was vacated without jurisdiction, thus nullifying the subsequent trial. We find the jurisdictional point dispositive.

*Authority to vacate order granting summary judgment*

On October 8, 1993, about 10 months before trial, defendants moved for summary judgment or summary adjudication of issues (Code Civ. Proc., § 437c; all unspecified section references are to that code). Garcia timely filed opposition on October 22, and the matter was assigned to the Honorable William J. Cahill. Judge Cahill issued a tentative ruling to grant the motion on November 4 but was unavailable the next morning when the matter was set to be argued. Garcia declined to stipulate to a commissioner presiding in Judge Cahill's stead, and the matter was assigned to the Honorable Barbara J. R. Jones for review and decision.

On November 12, reacting to Judge Cahill's tentative ruling, which had in part found no triable issue of fact as to the written release, Garcia filed a supplemental brief in opposition to summary judgment. In it, he provided further argument and cited, as creating triable issues, first, a paragraph of his own declaration previously filed with his original opposition and, second, a new declaration by himself further elaborating on the subject. Meanwhile, Judge Jones had on November 10 signed an order granting summary judgment and finding, as had Judge Cahill, no triable issue as to the settlement agreement and release. Her order was filed on November 16.

On November 29, Garcia filed a motion to reconsider and revoke the summary judgment order (§ 1008, subd. (a)) and/or set it aside as taken through mistake, inadvertence or excusable neglect (§ 473). He argued that his original opposition papers, through inadvertence and time pressure, had not correctly identified all evidence creating triable issues and that his supplemental brief correcting this shortcoming had not been filed in time for consideration, presumably also through inadvertence. This, he urged, constituted "different" facts or circumstances (§ 1008) and excusable neglect (§ 473) justifying relief. Defendants' opposition papers disputed both bases for relief.

Judge Jones heard the matter on December 15, 1993, and granted relief by an order filed January 5, 1994. Acknowledging the two grounds of relief sought, she ruled on only one: "The motion of plaintiff Garcia for relief under CCP § 473 is granted. The Court's order granting summary judgment filed November 16, 1993 is vacated, and the motion of [defendants] for

summary judgment is denied. [¶] A triable issue of material fact exists as to the terms of the [settlement agreement and release], whether the terms of the parties' agreement were performed by [defendants], and the effect of the [settlement agreement and release]."

Defendants seek reversal, relying on precedent from this division holding a court has jurisdiction to reconsider its orders only under section 1008 and cannot do so by resort to section 473. (*Gilberd* v. *AC Transit* (1995) 32 Cal.App.4th 1494 [38 Cal.Rptr.2d 626] (*Gilberd*).) Garcia first contended in his brief that we may affirm because the court had grounds to grant relief on the alternate, correct ground. Defendants disagree and argue the court either did not reach, or impliedly rejected, the new-or-different-facts question posed by the reconsideration motion.

■ A preliminary issue is this court's jurisdiction to review the challenged order, an issue we consider on our own motion. (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 398 [197 Cal.Rptr. 843, 673 P.2d 720].) An order granting a motion to vacate under section 473 is itself appealable, and thus reviewable only by direct appeal, where the order it vacates was an appealable final judgment. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 108, p. 127; *Elsea* v. *Saberi* (1992) 4 Cal.App.4th 625, 628 [5 Cal.Rptr.2d 742].) The vacated order here was an order granting summary judgment, which is not itself appealable. Appeal lies only from an ensuing judgment of dismissal. (*Donohue* v. *State of California* (1986) 178 Cal.App.3d 795, 800 [224 Cal.Rptr. 57].) Because no such judgment appears in the record, we assume there was none (*ibid.*) and find the order granting the motion to vacate reviewable on this appeal from a posttrial judgment. (*George Ball Pacific, Inc.* v. *Coldwell Banker & Co.* (1981) 117 Cal.App.3d 248, 253, fn. 4 [172 Cal.Rptr. 597]; cf. *Neilsen* v. *Saylors* (1956) 146 Cal.App.2d 139, 140 [303 P.2d 781]; *Rogers* v. *Silverman* (1989) 216 Cal.App.3d 1114, 1127 [265 Cal.Rptr. 286].)

■ Another preliminary issue, obliquely raised by Garcia, is whether our holding in *Gilberd* applies to the order here, which predated *Gilberd* by 14 months. It does. We have already so applied *Gilberd* in one published opinion (*Crotty* v. *Trader* (1996) 50 Cal.App.4th 765, 770-771 [57 Cal.Rptr.2d 818]), tacitly consistent with the general rule that statutes operate only prospectively, while judicial decisions operate retrospectively (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978-979 [258 Cal.Rptr. 592, 772 P.2d 1059]). Exceptions are rare (*Citizens for Covenant Compliance* v. *Anderson* (1995) 12 Cal.4th 345, 367 [47 Cal.Rptr.2d 898, 906 P.2d 1314]; *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24-25 [44 Cal.Rptr.2d 370, 900 P.2d 619]), and none are urged here.

*Discretion under section 473*

■ At oral argument Garcia's counsel contended, for the first time, that section 473 was the sole and correct ground for the subsequent order which

vacated summary judgment. We therefore consider whether section 473 can afford relief in the nature of reconsideration under these circumstances.

Section 473, subdivision (b), in pertinent part, provides: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . . No affidavit or declaration of merits shall be required of the moving party. Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties. . . ."

■ The provision of section 473 which mandates relief from a judgment of dismissal or default when the motion is based on an attorney's affidavit of fault does not mandate relief from other judgments. In all other cases, relief is discretionary. (*Ayala* v. *Southwest Leasing & Rental, Inc.* (1992) 7 Cal.App.4th 40, 43 [8 Cal.Rptr.2d 637].) Relief from summary judgment is within the discretion of the court. (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 258 [62 Cal.Rptr. 12, 431 P.2d 636]; *Uriarte* v. *United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 791 [59 Cal.Rptr.2d 332].)

■ Relief can only be granted under the mandatory provision in section 473, subdivision (b), if relief could have been granted under the discretionary provision. (See *Castro* v. *Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927, 931-932 [55 Cal.Rptr.2d 193] [cannot receive relief from the mandatory provision for violating the statute of limitations because such relief was not available under the discretionary provision].) The case of *Mink* v. *Superior Court* (1992) 2 Cal.App.4th 1338, 1343-1344 [4 Cal.Rptr.2d 195], illustrates the rule: The plaintiff's attorney clearly *would not* have been relieved from a dismissal based on the running of the statute of limitations but *was* properly relieved after showing the action was actually timely filed because of an intervening weekend and court holiday.

The mandatory provision was added by amendment in 1991 to provide relief to the client even when the attorney's mistake or neglect was not excusable. (Stats. 1991, ch. 1003, § 1 p. 4662.) To determine whether the

mistake or neglect was excusable, ". . . the court inquires whether 'a *reasonably prudent person* under the same or similar circumstances' might have made the same error . . . ." (*Bettencourt* v. *Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276 [228 Cal.Rptr. 190, 721 P.2d 71] (*Bettencourt*), italics added, citations omitted.) Thus, the mandatory provision does not create a whole new class of mistakes or acts of neglect by the attorney which result in the court having to grant relief. The distinction in the statute noted by the Supreme Court's use of the term "reasonably prudent person" describes the obvious intent of the Legislature to mandate relief only from mistakes fairly imputable to the client, i.e., mistakes anyone could have made. The Legislature did not intend to eliminate attorney malpractice claims by providing an opportunity to correct all the professional mistakes an attorney might make in the course of litigating a case. This is demonstrated by the language of the statute itself, which distinguishes between the mandatory relief available to the client and the permissive relief available under the original statute to "a party or . . . legal representative." (§ 473, subd. (b).)

Accordingly, any neglect of the attorney is imputed to the client, who has the burden on the motion of showing this neglect was excusable. To determine whether the mistake was excusable, the court will inquire whether the same error might have been made by " 'a reasonably prudent person under the same or similar circumstances' . . . ." (*Bettencourt, supra,* 42 Cal.3d 270, 276, citations omitted.) Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice.

■ An exception to this rule allows relief where the attorney's neglect, although inexcusable, was so extreme as to constitute misconduct effectively ending the attorney-client relationship. "Abandonment" may afford a basis for relief, at least where the client is relatively free of fault, but performance which is merely inadequate will not. In *Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898-901 [187 Cal.Rptr. 592, 654 P.2d 775], the court found relief under section 473 was not warranted where the attorney did not abandon the client, but rather simply represented the client ineffectively. Contrast this with *Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296, 301-302 [93 Cal.Rptr. 61], where the trial judge was found to have properly vacated judgment against the plaintiffs after their attorney not only failed to inform them of the trial date but also failed himself to appear at trial. Another variation appeared in *Vartanian* v. *Croll* (1953) 117 Cal.App.2d 639, 646-647 [256 P.2d 1022], where judgment was found properly vacated based upon the negligence of the plaintiff's attorney *plus* the fraud of the defendant's attorney. For the exception to apply, the attorney's misconduct must be

sufficiently gross to effectively abrogate the attorney-client relationship, thereby leaving the client essentially unrepresented at a critical juncture in the litigation. Such an exception would not be needed if the errors of counsel could be relieved by section 473 on the same grounds as those committed by the client.

Two recent cases have considered the application of section 473 in the context of summary judgment. In *Avila* v. *Chua* (1997) 57 Cal.App.4th 860 [67 Cal.Rptr.2d 373], the plaintiff was a week late in filing opposition to a motion for summary judgment. Plaintiff tried and failed to obtain an ex parte order continuing the hearing and later filed a motion for relief under section 473. The attorney's affidavit in support of the 473 motion stated the attorney had mistakenly calendared the date the response was due. The trial judge found this was not "good cause" and denied the motion. The Court of Appeal concluded the situation was "directly analogous to a default judgment" because "the court decided the matter on the other parties' pleadings [and] [t]here was no litigation on the merits" (57 Cal.App.4th at p. 868) and thus sidestepped the question of excusability. We conclude there was no need for the court in *Avila* to resort to the mandatory portion of section 473 since the facts would have permitted the same result under *Bettencourt,* discussed above. Moreover the case supplies little guidance in a case such as ours where opposition is filed but is insufficient on the merits.

More to the point is the opinion in *Bernasconi Commercial Real Estate* v. *St. Joseph's Regional Healthcare System* (1997) 57 Cal.App.4th 1078 [67 Cal.Rptr.2d 475], in which the appellant sought relief from dismissal under section 583.250. The Court of Appeal concluded ". . . section 473 may be reconciled with the discretionary dismissal statutes only if limited to those dismissals which are the procedural equivalent of defaults—i.e., those which occur because the plaintiff's attorney has failed to oppose a dismissal motion. [Citation.]" (*Bernasconi Commercial Real Estate* v. *St. Joseph's Regional Healthcare System, supra,* at p. 1082.) We find this reasoning equally serviceable here, where there was no complete failure to oppose, but rather an opposition which was, though apparently timely and procedurally adequate, inadequate in substance. This case was not a default but rather a motion lost, on its merits, after opposition was filed. Section 473 was not meant to apply to these facts.

In contrast with his written briefs, Garcia's oral argument contended the order issued by Judge Jones was based solely upon section 473. The record describes the tardy presentation of an alternative argument based upon facts and law at all times known to Garcia's counsel; this is demonstrated by counsel's own declaration and brief filed to "supplement" his original opposition to the motion. The "inadvertence" asserted by Garcia's counsel is

no more than late recognition of inadequate briefing and failure to cite more specifically to a paragraph in a declaration. Garcia's supplemental briefing was obviously prepared after Judge Cahill's tentative ruling and filed, apparently without permission from the court, two days after Judge Jones had granted the motion.

Garcia's presumption that consideration of the late-filed papers, or even oral argument based upon them, would have produced a different result begs the question. The issue is not whether the original opposition was insufficient to prevail, but rather whether the reason advanced for its insufficiency was "excusable" within the meaning of section 473. The "reasonably prudent person standard" established by the Supreme Court in *Bettencourt, supra*, 42 Cal.3d 270, gives an attorney the benefit of such relief only where the mistake is one which might ordinarily be made by a person with no special training or skill. Obviously, an untrained person might be expected to make mistakes when performing the functions of an attorney; the acknowledged desirability of professional legal training presumes this to be so. Just as obviously, an attorney acting within his or her professional capacity is held to a different standard of care and may not be excused by section 473 from errors occurring during the discharge of strictly professional duties.

The advancement of arguments is the very essence of the professional responsibilities assumed by attorneys; failure to timely make an argument cannot, therefore, be considered a mistake permitted to an untrained "reasonably prudent person" within the meaning of section 473. Garcia's counsel did not contend a page was lost in his office machinery or that a filing date was miscalculated; nor was it contended by Garcia that an abandonment ended the attorney-client relationship; rather, counsel pointed to the stress admittedly attending modern legal practice as affording an acceptable excuse for neglect within the meaning of the Code of Civil Procedure. We cannot find the Legislature so intended.

The Legislature recognized the distinction between the mandatory relief created by the 1991 amendment and the discretionary relief previously available. At the time of the amendment the Supreme Court had already defined the type of error susceptible of relief within the discretion of the court as one which could have been made by a "reasonably prudent person" under similar circumstances. We are required to presume the Legislature knew the state of the law to which the 1991 amendment would apply (cf. *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155-1156 [278 Cal.Rptr. 614, 805 P.2d 873]) and did not intend to expand the Supreme Court's definition of what constituted "mistake, inadvertence, surprise or excusable neglect" for purposes of relief under the statute. Further evidence for this intent to limit the extent of relief available to attorneys appears in the

1991 amendment itself. The amendment rewrote the fourth sentence of the third paragraph of the section to be expressly limited to default judgments, while the original language considered by the Supreme Court in *Bettencourt* referred to relief from "judgment, [dismissal,] order, or other proceeding . . . ." (Stats. 1981, ch. 122, § 2, p. 862.) This does not even suggest the Legislature intended to provide an avenue for attorneys to escape the consequences of their professional shortcomings by the filing of a simple motion. If the discretionary portion of section 473 was thus extended by the mandatory provision added in 1991, the statute might be used to circumvent traditional redress for professional malpractice even after trial and entry of judgment. Such an upheaval cannot be countenanced where the simpler meaning is so easily perceived.

The inescapable conclusion is that the court abused its discretion in vacating the summary judgment under section 473. The type of "mistake, inadvertence, surprise or excusable neglect" which might have permitted the original order to have been vacated is simply not present in this record. Accordingly, if the motion were based solely upon a plea for relief under section 473, as Garcia's counsel now lately contends at oral argument, it must also have failed.

### The application of section 1008

We next consider whether the ruling can be affirmed by resort to section 1008, which requires a showing of "new or different facts, circumstances, or law" (§ 1008, subd. (a)). Garcia alternatively applied for relief on this ground and in his initial briefing on appeal confidently contended he "complied with all" its requirements. Thus, he argued, the court had full jurisdiction to hear and rule upon his motion for reconsideration and we must defer to the trial court's exercise of discretion. "Section 1008 governs reconsideration of court orders whether initiated by a party or the court itself. 'It is the exclusive means for modifying, amending or revoking an order. That limitation is expressly jurisdictional.' [Citation.]" (*Gilberd, supra*, 32 Cal.App.4th 1494, 1499; § 1008, subd. (e).)

Section 1008 was amended to specify its exclusive and jurisdictional effect in 1992, before this challenged order, thus making the new provisions applicable (*Wilson* v. *Science Applications Internat. Corp.* (1997) 52 Cal.App.4th 1025, 1033, fn. 6 [60 Cal.Rptr.2d 883]), and their jurisdictional effect had been declared in a binding published decision several months before the order (*Morite of California* v. *Superior Court* (1993) 19 Cal.App.4th 485, 492-493 [23 Cal.Rptr.2d 666]; § 1008, subd. (e)). *Gilberd* thus merely clarified existing law (*Waller* v. *Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 25), and its key holding has remained uncontroverted since then (see *Community Memorial Hospital* v. *County of Ventura* (1996) 50

Cal.App.4th 199, 205 [50 Cal.App.4th 199, 56 Cal.Rptr.2d 732] [disputing only any implication in *Gilberd* that motions for summary judgment or adjudication, following an overruled demurrer, are subject to section 1008]).

Garcia's reasoning is flawed. At the outset, it appears the court either did not reach, or implicitly rejected, his alternative motion. The order recites Garcia had moved "(1) for reconsideration of the motion for summary judgment . . . and for revocation of that order, and (2) additionally or alternatively, to set aside the order granting said [motion] pursuant to Section 473 of the Code of Civil Procedure." Then, stating those "motions" had been read and considered, the order says the "motion" for relief "under CCP § 473 is granted." This indicates the court did not rely on section 1008 and, to borrow from *Gilberd*, "did not even purport to exercise any discretion with respect to whether [Garcia's] motion fell within the jurisdictional boundaries prescribed by that statute." (*Gilberd, supra,* 32 Cal.App.4th 1494, 1500, fn. 2; see also *Jade K.* v. *Viguri* (1989) 210 Cal.App.3d 1459, 1467 [258 Cal.Rptr. 907] [presuming, absent any contrary indication in the record, denial was for failure to comply with section 1008's requirements].)

Since it is obvious no discretion was exercised, we must decline Garcia's invitation to review the order deferentially for abuse of discretion. (E.g., *Lucas* v. *Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027 [46 Cal.Rptr.2d 177]; *Gilberd, supra,* 32 Cal.App.4th 1494, 1500, fn. 2.)

Indeed, if we deem the order an implicit denial of relief under section 1008, then it is our duty to review the *denial* deferentially and uphold it even if we might have ruled otherwise in the first instance (cf. *Cochran* v. *Linn* (1984) 159 Cal.App.3d 245, 251 [205 Cal.Rptr. 550] [§ 473 denial]). Therefore, we may uphold the order only if we can say the showing compelled a grant of reconsideration as a matter of law.

Judge Jones initially granted summary judgment based on defendants' undisputed facts 80 through 84 being "not sufficiently refuted." Those facts showed the settlement agreement and release signed by Garcia in September 1985 to end the 1984 federal court action included a release with prejudice of all claims arising therefrom, including claims over Dyna-Tel's ownership and rights to the Lakewood receivable, and thus barred this lawsuit over the same matters. In his October 25 opposition, Garcia called all five facts "Disputed," citing as supporting evidence the written agreement and release, the second amended complaint in the prior suit, his deposition testimony, and two declarations by himself, one newly drafted and one from 1991. (The latter one, offered through a request for judicial notice, was rejected in the order with a cite to *Sosinsky* v. *Grant* (1992) 6 Cal.App.4th 1548 [8 Cal.Rptr.2d 552], a ruling not disputed on appeal.)

In his motion for reconsideration, Garcia raised two matters. First was paragraph 13 of the same newly drafted four-page declaration he had

submitted before, albeit without a specific paragraph cite. Paragraph 13 addressed the formation and capitalization of Chemark International, which events had been a covenant in the settlement. The paragraph said Garcia had "liquidity of several million dollars" and had stood ready, willing and able to perform, but Hejmadi had "failed to come up with his capital to keep his end of the bargain. . . ." The new paragraph cite, counsel contended on the motion, raised a triable issue "whether there was indeed a valid and effective release of all claims against defendants[.] Due to an inadvertent oversight, however, [this] testimony was not cited correctly in plaintiff's opposing separate statement of undisputed material facts. As a result, it was not readily identifiable in plaintiff's opposition papers, and I had no opportunity to call it to Judge Jones' attention in oral argument. . . ."

The second matter was a completely new, two-page declaration by Garcia, signed November 24, in which he relayed face-to-face and telephonic conversations he had with Hejmadi in 1985 regarding their understanding of the settlement agreement and release. As to this declaration, counsel represented in support of reconsideration: "[It] contains important facts and evidence which, due to an inadvertent oversight, were not presented in plaintiff's opposition . . . . This testimony, in my opinion, is sufficient to raise triable issues as to the validity and interpretation of those two documents and, consequently, whether defendants have in fact been released from the claims in the present lawsuit."

Neither the paragraph cite nor, of course, Garcia's later declaration had been included in the supplemental brief filed on November 12, 1993. The brief had, however, contained a nearly two-page argument that the settlement agreement and release had to be read together as an integrated transaction, were otherwise devoid of consideration and, in any event, could not bar claims arising from conduct subsequent to the signing.

Garcia argued in his motion that while section 1008's former call for a " 'different state of facts' " had been judicially construed as requiring both newly discovered evidence and an explanation for not producing it earlier (see, e.g., *Robbins* v. *Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 317 [4 Cal.Rptr.2d 649]), a 1992 amendment requiring "new or different facts, circumstances, or law" (§ 1008, subd. (a)) signaled legislative conformance with certain cases which had construed "different" as not necessarily requiring "newly discovered" facts (e.g., *Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386-1387, fn. 9 [272 Cal.Rptr. 387]). Thus, he reasoned, any facts not previously "presented" to a court now qualified as "different" (if not "new") facts or circumstances justifying reconsideration.

His argument goes too far. First, the amendment has tightened, not loosened, the requirements of the statute. Cases had held the "newly discovered" and "explanation," or diligence, requirements applicable to final but not interim orders, interim orders being subject to reconsideration under a court's inherent power, independent of section 1008 (e.g., *Robbins* v. *Los Angeles Unified School Dist.*, *supra*, 3 Cal.App.4th 313, 317; *Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1013 [183 Cal.Rptr. 594]); and this had led to an emerging view of section 1008 as simply unavailable to challenge a final order, the only recourse being motions for new trial or to vacate (*Passavanti* v. *Williams* (1990) 225 Cal.App.3d 1602, 1606-1608 [275 Cal.Rptr. 887], discussed in *Stephen* v. *Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 817, fn. 6 [1 Cal.Rptr.2d 130]). Against this backdrop of eroding coverage, the 1992 amendment specified section 1008's application to all orders, final or interim, and made its provisions exclusive and jurisdictional. The legislative history confirms this increased coverage as a main goal designed "to reduce the number of motions to reconsider and renewals of previous motions heard by judges in this state."

The amending statute provided: "The Legislature finds and declares the following: [¶] (a) Since the enactment of Section 1008 of the Code of Civil Procedure, some California courts have found that the section does not apply to interim orders. [¶] (b) In enacting Section 4 of this act, it is the intent of the Legislature to clarify that no motions to reconsider any order made by a judge or a court, whether that order is interim or final, may be heard unless the motion is filed within 10 days after service of written notice of entry of the order, and unless based on new or different facts, circumstances, or law. [¶] (c) In enacting Section 4 of this act, it is the further intent of the Legislature to clarify that no renewal of a previous motion, whether the order deciding the previous motion is interim or final, may be heard unless the motion is based on new or different facts, circumstances, or law. [¶] (d) Inclusion of interim orders within the application of Section 1008 is desirable in order to reduce the number of motions to reconsider and renewals of previous motions heard by judges in this state." (Stats. 1992, ch. 460, § 1.)

We also conclude the amendment's reference to "new or different" facts did not make the section's prerequisites less restrictive. Garcia's argument, if accepted, would effectively eviscerate the threshold showing of diligence which has long required an "explanation" of why the "newly discovered" matter was not presented earlier. Garcia would have us say this requirement is met by anything not previously "presented" to the court. The miserable result would be to defeat the Legislature's stated goal of reducing the

number of reconsideration motions and would remove an important incentive for parties to efficiently marshall their evidence.

In fact, the change in terminology upon which Garcia relies appears to be no more than slippage in the drafting process. The Legislative Counsel's Digest for the amendment mentions the section being "revised" so that applications for relief "also may be made based upon new or different circumstances or law" but does not elaborate on the meaning of the different terms:

"(1) Existing law provides that when an application for an order has been made to a judge or to the court, and has been refused . . . or granted . . . , any party affected by the order may, within 10 days after knowledge of the order and based on an alleged different state of facts, make application to the same judge to reconsider the matter and modify, amend, or revoke the prior order. Existing law also provides that when a party who originally made an application for an order . . . makes a subsequent application for the same order upon a different state of facts, the party must show certain information by affidavit. A violation of these provisions is punishable as a contempt. [¶] This bill would revise these provisions to provide that these applications also may be made based upon new or different circumstances or law. It would provide that an application to reconsider may only be made to the same judge or court that made the order, and would require the party making an application to reconsider to show certain information by affidavit. . . ." (Legis. Counsel's Dig., Sen. Bill No. 1805 (1991-1992 Reg. Sess.).)

We find the case law illuminating. Former section 1008 (subd. (b)) spoke of applying upon " 'an alleged different state of facts' " and of showing by affidavit " 'what new facts' " were claimed (*Film Packages, Inc.* v. *Brandywine Film Productions, Ltd.* (1987) 193 Cal.App.3d 824, 827 [238 Cal.Rptr. 623] (*Film Packages*)), thus using both the terms "new" and "different." These were construed as requiring, as in motions for a new trial based on newly discovered evidence, "not only new evidence but also a satisfactory explanation for the failure to produce that evidence at an earlier time." (*Blue Mountain Development Co.* v. *Carville, supra*, 132 Cal.App.3d at p. 1013.)

The new-facts element took on a relaxed meaning in some cases. For example, in *Film Packages, supra*, 193 Cal.App.3d at page 829, the court upheld the grant of a renewed application for a right-to-attach order reasoning: "[W]hile new facts, in the sense of substantive occurrences which were not previously known, were not shown, new evidence of the meaning of those facts was produced, stemming from depositions of the operative players. Those depositions were taken after the previous attachment hearings. The trial court found that the depositions shed new light on the case.

Contrasted with the naked facts which showed up in previous declarations by the subsequent deponents, the depositions provided 'many subtle nuances and subjective impressions' none of which could be drawn from the declarations. Thus, new information was made available." Section 1008 has also been more loosely described as imposing a burden to show "changed circumstances." (*Wilson* v. *Science Applications Internat. Corp.*, *supra*, 52 Cal.App.4th at p. 1033.)

Without presuming to know which of the many published cases might have influenced the amendment, we may comfortably assume the substitute language, "new or different facts, circumstances, or law," was designed to approve, generally, the case law relaxation of what constitutes new or different facts justifying reconsideration. This does not mean, however, that all facts not previously presented to a court now suffice; nor does it mean the Legislature has dispensed with the court-declared need to show a satisfactory explanation for failing to provide the evidence earlier, which can only be described as a strict requirement of diligence. (See, e.g., *Film Packages*, *supra*, 193 Cal.App.3d 824, 829 [new depositions had been "taken after the previous attachment hearings"].)

Returning to whether Garcia's showing satisfied section 1008 as a matter of law, we hold it did not. The information consisting of Garcia's own declared knowledge was obviously always within his possession, and no *satisfactory* explanation appeared for not bringing it out earlier. The matters it addressed had been placed in issue by the motion, and there is no showing Garcia had been unavailable to counsel anytime during preparation of the initial opposition. (Cf. *Cochran* v. *Linn*, *supra*, 159 Cal.App.3d 245, 252.) Paragraph 13, moreover, had already been presented in his initial opposition; and the lack of a specific citation to that paragraph is insignificant given the declaration's mere four-page length. Concern over lack of a chance for oral argument, this court held in *Gilberd*, "is clearly collateral to the merits" of a motion and therefore no ground for reconsideration. (*Gilberd*, *supra*, 32 Cal.App.4th 1494, 1500 & fn. 3.) Garcia's reliance on lack of argument is puzzling, besides, because Judge Jones's order granting relief recites that after Garcia refused to stipulate to the commissioner, the matter was "submitted, to be heard without oral arguments . . . ." The record shows counsel had no further expectation of argument.

The tardy supplemental brief filed on November 12, between the order's signing (Nov. 10) and filing (Nov. 12), contained *none* of the claimed different facts later submitted with the motions for relief, and absolutely no explanation for this was offered. If, as claimed, it was Judge Cahill's tentative ruling of November 4 which made counsel realize the deficiency of

his prior showing, why wasn't the further evidence offered with the unauthorized supplemental brief? No explanation. Why was the late brief itself not filed until a full week after the tentative ruling? Again no explanation.

The appealed order's silence as to section 1008, and express reliance on section 473, might be read to imply a mistaken belief it was unnecessary to reach the alternative ground, in which case the court's error was a failure to exercise discretion. As suggested in *Gilberd*, one alternative in such a case might be to remand for discretion to be exercised. (*Gilberd, supra*, 32 Cal.App.4th 1494, 1500, fn. 2, citing *Gardner* v. *Superior Court* (1986) 182 Cal.App.3d 335 [227 Cal.Rptr. 78].) Of course, the case *Gilberd* cited was a writ proceeding, and there has been an intervening trial here, making remand an inelegant remedy. Awkwardness aside, we find this record, as in *Gilberd*, demonstrates such lack of merit that remand "would be a futile act." (32 Cal.App.4th 1494, 1500, fn. 2.) In other words, to grant relief would be error in excess of jurisdiction.

### Attorney fees

Claiming Garcia breached the settlement agreement by bringing this action, defendants seek remand for the superior court to award attorney fees under paragraph 5.3 of the settlement agreement, which provides for reasonable attorney fees to the prevailing party in the event of litigation. This issue, while raised on the motion, was not addressed in the grant of summary judgment. We accordingly express no view and leave this for the superior court to consider in the first instance on remand.

Paragraph 3.2 of the settlement agreement provides: "The parties agree to refrain and forbear form commencing, instituting or participating in, either as a named or unnamed party, any other lawsuit, action, or other proceedings against each other, whether brought by them or others on their behalf, based on or arising out of any of the facts or circumstances set forth in the Complaint in this Litigation."

### DISPOSITION

The superior court lacked jurisdiction to reconsider the grant of summary judgment, enter a new order and proceed with trial. The ensuing judgment after trial is accordingly reversed, and the cause is remanded for the court to consider the issue of attorney fees under the settlement agreement.*

---

*Garcia raises various meritless arguments in a petition for rehearing. We briefly respond to four.

First, we have not decided the case based on issues "not proposed or briefed by any party to the proceeding . . ." so as to require a grant of rehearing to allow supplemental briefs

Kline, P. J., and Haerle, J., concurred.

A petition for a rehearing was denied November 19, 1997, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied February 18, 1998. Kennard, J., was of the opinion that the petition should be granted.

---

(Gov. Code, § 68081). Defendants proposed the issues of the erroneous vacation of the summary judgment and our *Gilberd* decision in a request to file a supplemental opening brief. Garcia acceded to that request and addressed the points in his respondent's brief. Now, in an argument remarkably like his showing on the motions below, he complains his two-page response was inadequate to the task of addressing other, complex issues. The claim is specious. He had the opportunity to respond and chose his own strategy in that regard. While this may or may not be another example of inexcusable neglect on his part, it is not a violation of Government Code section 68081 on ours. Also, this court specially advised the parties to come to oral argument "particularly prepared" to discuss whether reconsideration of the order granting summary judgment was in excess of jurisdiction under *Gilberd*, and both sides obliged us.

Second, nowhere in this opinion do we hold, as Garcia imagines, that the 1992 amendments to section 1008 somehow abrogated the availability of relief under section 473 for mistake or excusable neglect. We expressly discuss such relief as available, even in the context of summary judgment, and carefully scrutinize the adequacy of Garcia's showing under section 473.

Third, we cannot deem the order harmless error. This argument is improperly raised for the first time on petition for rehearing (cf. *Kinney* v. *Vaccari* (1980) 27 Cal.3d 348, 356-357, fn. 6 [165 Cal.Rptr. 787, 612 P.2d 877] [points raised at oral argument]; *Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 641 [178 Cal.Rptr. 167] [same]) but fails in any event. Garcia offers an analogy to one case holding a denial of summary judgment harmless in light of an ensuing trial and judgment for the plaintiff (*Waller* v. *TJD, Inc.* (1993) 12 Cal.App.4th 830, 833-836 [16 Cal.Rptr.2d 38]) and another case extending that rationale to pretrial error in denying a motion to dismiss for dilatory prosecution (*Reid* v. *Balter* (1993) 14 Cal.App.4th 1186, 1195 [18 Cal.Rptr.2d 287]). However, while there is superficial appeal in his likening the erroneous order here to an erroneous denial of summary judgment, Garcia ignores crucial differences. Error under section 1008 is jurisdictional, depriving the court of power to proceed (*Gilberd, supra,* 32 Cal.App.4th 1494, 1498-1500), and error in a ruling to vacate under section 473, while itself an abuse of discretion subject to harmless error (§ 475; Cal. Const., art. VI, § 13), is not harmless in our context. Had the ruling been within the court's discretion, it would only have allowed the summary judgment order to be vacated, not *reconsidered on the merits*, as occurred here. To enlist section 473 to that end would, as in *Gilberd*, circumvent the Legislature's designation of section 1008 as the exclusive statutory vehicle. (*Gilberd, supra,* 32 Cal.App.4th at p. 1501.)

Finally, we obviously disagree with those decisions which continue to state, after the 1992 amendments and our analysis in *Gilberd*, that the provisions of section 1008 are not jurisdictional or which state, without qualification, that a court may reconsider any judgment before it is final, independent of statute. (*Gailing* v. *Rose, Klein & Marias* (1996) 43 Cal.App.4th 1570, 1579 [51 Cal.Rptr.2d 381] [summary judgment]; *Bernstein* v. *Consolidated American Ins. Co.* (1995) 37 Cal.App.4th 763, 774 [43 Cal.Rptr.2d 817] [new trial]; *Nave* v. *Taggart* (1995) 34 Cal.App.4th 1173, 1177 [40 Cal.Rptr.2d 714] [same].) These cases do not consider the 1992 amendments making the provisions exclusive and jurisdictional, and abrogating the distinction between final and interim orders. Also, the law and motion judge here did not act on her own but on motion of Garcia.