98 Cal.Rptr.2d 30 (2000)
82 Cal.App.4th 160
CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant,
v.
Tony TIJERINO, Defendant and Respondent.
No. A083665.
Court of Appeal, First District, Division Two.
June 26, 2000.
Review Denied September 20, 2000.[*]
*31 Bill Lockyer, Attorney General, Richard Frank, Chief Assistant Attorney General, David R. Druliner, Chief Assistant Attorney General, Carol Ann White, Supervising Deputy Attorney General, Mary A. Roth, Deputy Attorney General, for Plaintiff and Appellant.
Lori Klein, under appointment by the Court of Appeal, Santa Cruz, for Defendant and Respondent.
LAMBDEN, J.
The advancement of technology creates new issues for the courts. One of those issues is presented when a final judgment is entered in a paternity suit and it is later determined, through genetic testing, that the legal father is not the biological father of the child. Before the birth of the child in this case, the respondent stipulated in court that he was the child's father. When the child was nearly a year old, blood tests effectively excluded respondent from paternity, and he asked the trial court set aside the judgment. The court at first refused, but later reconsidered and set aside the judgment. This appeal is taken by the county on the grounds that such reconsideration was improper as a matter of law. We agree and reverse.

Factual History
On February 5, 1996, respondent signed a stipulation for entry of a judgment that he was the father of Anthony, who was about to be born to the mother of respondent's daughters, Felicia and Theresa. In the stipulation Anthony was described "as unborn Brooks" and respondent agreed to pay child support for all three children.
The two girls were already living with respondent and when Anthony was born, he also went to live with respondent. Anthony had cocaine in his blood at birth and was a troubled infant. Despite his best efforts, respondent was unable to care for all three children. When Anthony was six months old, respondent sent him to live with his mother, who was apparently continuing to use crack cocaine. Anthony's condition quickly deteriorated. When he was approximately 10 month's old, his mother called the Child Protective Services (CPS) hotline and reported that she was not able to care for her son.
She told the Department of Social Services (DSS) that she had "no idea who the father is" and that respondent's paternity had been "ruled out via bio tests." Respondent stated in his declaration in support of the motion to set aside the judgment that he was present when Anthony's mother made this phone call from his home and heard what she said. A petition was filed pursuant to section 300 of the Welfare and Institutions Code on April 15, 1997, and Anthony was placed under foster care.
A routine paternity inquiry was sent to the Family Support Division, which replied that respondent was the father according to a judgment entered in the referenced family support case. However, before the prior paternity judgment was disclosed, the juvenile court had gone ahead and ordered blood tests to be conducted. The tests excluded respondent from paternity. *32 Consequently, respondent feels entitled to state flatly that he is not Anthony's father.

Procedural History
Approximately two months after the test results became available, respondent filed a motion to set aside the stipulated judgment. The minor joined respondent through his court appointed counsel, who characterized the motion as a request to set aside a voluntary declaration of paternity pursuant to Family Code section 7552.5. Although no one else has ever been identified as a possible father, Anthony's attorney contended that it was in Anthony's "best interest" to know the identity of his "true" father. Anthony was approximately one year old when his attorney argued to the court that: "[The] minor sees no benefit to him in perpetuating the falsehood that [respondent] is his father." The matter was continued several times and the district attorney filed opposition, contending that paternity had been finally established by the stipulation and that the judgment was res judicata.
The set-aside motion was heard before a judge sitting pro tempore and taken under submission on January 29, 1998. On February 24, 1998, the judge filed her opinion and order denying respondent's motion to aside the judgment of paternity. The judge's opinion concluded that Family Code section 7575 was inapplicable, and that respondent was not entitled to relief under Code of Civil Procedure section 473 or under Family Code section 2122. The judge also concluded that respondent had not offered proof of extrinsic fraud sufficient to merit any equitable relief.
Inexplicably, the order was sent by mail to the district attorney and to the minor's attorney, but not served on respondent's attorney. Nevertheless, respondent learned of the order and, on March 10, 1998, moved for reconsideration. Respondent's new motion repeated his argument that the stipulated judgment should be treated as though it was a voluntary declaration of paternity under Family Code section 7575. He also reiterated his claim that the paternity judgment was not in the best interest of the minor child. Respondent also raised the new argument that, at the time of his stipulation, he could not have effectively waived his right to blood testing because the genetic test that ultimately showed Anthony could not be his progeny was not then possible.
Despite the district attorney's opposition on the grounds that there was no authority to permit reconsideration, the judge set aside the paternity judgment. At the hearing on the motion the judge stated that there was "new law" and cited a case that was a few days old. The district attorney protested that this case was not yet final and could not support the order. The case was later ordered depublished by the California Supreme Court.
The county filed a timely notice of appeal on July 17,1998.

Discussion
In Gilberd v. AC Transit (1995) 32 Cal.App.4th 1494, 38 Cal.Rptr.2d 626, this division observed that Code of Civil Procedure "[s]ection 1008 governs reconsideration of court orders whether initiated by a party or the court itself. `It is the exclusive means for modifying, amending or revoking an order. That limitation is expressly jurisdictional.'" (Id. at p. 1499, 38 Cal.Rptr.2d 626.) In Garcia v. Hejniadi (1997) 58 Cal.App.4th 674, 68 Cal.Rptr.2d 228, we elaborated the holding of Gilberd v. AC Transit by observing that section 1008 expressly requires a showing of "new or different facts, circumstances, or law" (id. at p. 685, 68 Cal.Rptr.2d 228) in order to permit an order granting reconsideration. With these principles in mind, we review the order granting reconsideration deferentially and look for an abuse of discretion. (Lucas v. Santa Maria Public Airport Dist. (1995) 39 Cal.App.4th 1017, 1027, 46 Cal.Rptr.2d 177; Gilberd v. AC Transit, supra, 32 Cal.App.4th at p. 1500, fn. 2, 38 Cal.Rptr.2d 626.)
*33 Respondent contends that his motion for reconsideration was appropriately considered under Code of Civil Procedure section 1008 because he presented "new or different facts, circumstances, or law." And he claims he demonstrated his diligence by explaining why these new "facts, circumstances, or law" were not presented at the original hearing, as required by Baldwin v. Home Savings of America (1997) 59 Cal.App.4th 1192, 1200, 69 Cal. Rptr.2d 592.
Respondent first claims that the "significant new fact" presented at the time of the motion for reconsideration was the revelation that the juvenile court itself, and not any of the parties, requested and paid for the blood tests that unseated Anthony's presumed progenitor. Respondent quotes the judge's statement that "in this court's opinion, the fact that another judge of this court ordered blood tests gives great weight to bringing this motion and provides the necessary threshold for hearing the motion." Neither the judge nor respondent has attempted to explain the relevance of the payment for the test; and we discern no obvious pertinence either from the impetus for the tests or from the source of the remittance.
Respondent ignores the fact that the judge previously denied the same motion based on essentially the same facts. Respondent claims that the critical new evidence presented at the second hearing was the fact that another department of the same court had ordered the testing to be done at county expense. And while respondent concedes that he had already argued at the first hearing that the county had agreed to pay for the paternity testing, he speculates that the judge did not believe him. We are not persuaded that the significance of the test results was altered in any way by the fact that another department of the court had ordered them.
At the original hearing on January 29, 1998, counsel for respondent stated that "testing was ordered by the juvenile court at the request of the Department of Human Services." Counsel also stated that he had been required to obtain the order from the juvenile court because the district attorney had refused to stipulate to the administration of the testing. In his declaration in support of the second motion for reconsideration, counsel for respondent stated that he first learned that the genetic testing had been paid for by the juvenile court on the day after he received the decision denying the first motion for reconsideration. However, the origin of the blood testing order was not a new fact and the test results themselves were not new evidence. All that respondent claims to have belatedly discovered is the source of the payment for the tests. If the source of the order and payment were more important than the actual results of the blood tests, respondent should have been diligent in placing the supporting documentation before the court in the first place. The case law requires "not only new evidence but also a satisfactory explanation for the failure to produce that evidence at an earlier time." (Blue Mountain Development Co. v. Carville (1982) 132 Cal.App.3d 1005, 1013, 183 Cal.Rptr. 594.)
Respondent attempts to persuade us of this point by claiming that the trial court's initial decision was based on the premise that the paternity testing had been conducted without any court order. Indeed, the issues framed by the judge at the first hearing were as follows: "(1) is a stipulated judgment synonymous with a voluntary declaration of paternity? (2) is this court bound to follow or apply the results of a blood test for paternity that was not ordered by any court? (3) is the stipulated judgment res judicata?" However, the judge's original decision did not again mention the question of whether any court had ordered the blood testing, except to rebuke the county department of human services for "disrupt[ing] the parent-child relationship" by conducting the tests and disclosing its results.
*34 Perhaps the court listed the issue out of caution over the reliability of the tests, but there was no genuine dispute over the accuracy of the tests at either hearing. No authority has been cited for the proposition that a blood test conducted pursuant to a court order is inherently more reliable than a properly administered test conducted without a court order. The court's original denial was not based upon any rejection of the test results and never questioned the accuracy of the conclusion that respondent was not the child's biological father. Accordingly, the second order could not have been based upon the new evidence that the juvenile court had ordered the testing because the judge had already chastised the county for conducting the testing and disclosing the results. If the judge did not believe the test results were accurate, there would have been little reason for her to rebuke the Department of Human Services.
Respondent cannot contest the test results; his entire effort to rid himself of paternal responsibility is founded upon their accuracy. And he did not need any prior court order to lend substance to his motion. The trial judge never questioned the accuracy of the test results. There has been no suggestion of how the initial source of the test results makes them any less weighty. On the contrary, everyone concerned with the case has apparently conceded that respondent is not the biological father of Anthony. What is not conceded by respondent is the law's recognition of forms of paternity that are not based on mere consanguinity.
The trial court's original decision concluded that Family Code section 7575 could not apply to this case because it involved a stipulated judgment rather than a voluntary declaration of paternity. Under the circumstances, the trial judge correctly concluded that only Code of Civil Procedure section 473 and Family Code section 2122 were available as a basis to set aside the judgment and that both the six-month time limit of Code of Civil Procedure section 473 and the one-year time limit imposed by Family Code section 2122, subdivision (e) had expired. The judge also concluded that the provisions of Family Code, section 2122, subdivision (a) would have required essentially the same proof of extrinsic fraud as would have been required by the decision in City and County of San Francisco v. Cartagena (1995) 35 Cal.App.4th 1061, 41 Cal.Rptr.2d 797 (Cartagena). On these points, the judge did not change her mind.
The trial judge did change her view of the applicability of Cartagena, which held that an otherwise valid paternity judgment cannot be set aside merely on the basis of subsequent scientific evidence in the absence of extrinsic fraud. Following the holding of Cartagena, the judge in this case originally concluded that because there "has been no showing of extreme extrinsic fraud.... There exists a valid final judgment of paternity in this case." However, at the second hearing the same judge cited, over the objection of the district attorney, another case recently decided by the Second District which contradicted the holding of Cartagena, supra, 35 Cal.App.4th 1061, 41 Cal.Rptr.2d 797. The new case (County of Los Angeles v. Warmoth (April 2, 1998) B114249, opn. ordered nonpub. July 15, 1998) was not then final and was soon ordered depublished. The case was not new law within the meaning of Code of Civil Procedure section 1008.
Respondent's citations of authority (for the proposition that the trial court's reliance on new facts and law should be reviewed for abuse of discretion) are so general as to be slightly mystifying. (E.g., Dameshghi v. Texaco Refining & Marketing, Inc. (1992) 3 Cal.App.4th 1262, 1283, 6 Cal.Rptr.2d 515; Trope v. Katz (1995) 11 Cal.4th 274, 292, 45 Cal.Rptr.2d 241, 902 P.2d 259.) However, if we were reviewing the denial of the original motion, it would be our duty to review the denial deferentially and to uphold it, in the absence of an abuse of discretion, even if we *35 might have ruled otherwise. (Cf. Cochran v. Linn (1984) 159 Cal.App.3d 245, 205 Cal.Rptr. 550.) This places us in the odd circumstance of reviewing the trial court's reversal of its own denial of the original set-aside motion even though only the second order is before us on appeal. Therefore, as we noted in Garcia v. Hejmadi supra, 58 Cal.App.4th 674, 686, 68 Cal. Rptr.2d 228, we may uphold the later order for reconsideration (which effectively reversed the first order) only if we can say that the showing supporting the second order compelled reconsideration as a matter of law.
The 1992 amendment of section 1008 of the Code of Civil Procedure was designed to tighten the interpretation of what constitutes new or different facts justifying reconsideration. "This does not mean, however, that all facts not previously presented to a court now suffice; nor does it mean the Legislature has dispensed with the court-declared need to show a satisfactory explanation for failing to provide the evidence earlier, which can only be described as a strict requirement of diligence." (Garcia v. Hejmadi, supra, 58 Cal.App.4th at p. 690, 68 Cal.Rptr.2d 228.)
We conclude that respondent's showing on the motion for reconsideration did not satisfy the requirements of Code of Civil Procedure section 1008 as a matter of law. Any evidence of an order for payment for the blood testing was tangential to the issue of whether the order establishing paternity could be set aside based upon the accuracy of the test results. Moreover, the question of whether the court itself ordered the tests was raised and previously rejected by the court. The new evidence of payment was barely mentioned at the hearing of the motion for reconsideration and the reliability of the tests was not disputed. Also, it was obvious at the time of the second hearing that the newly published case raised by respondent was not final and could not be cited as law. No other grounds for the revocation of the original order appears in the record. The trial court's order for reconsideration setting aside the prior paternity judgment was terse: "Satisfactory proof having been received and good cause appearing: [¶] it is hereby ordered that the Family Law Judgment pertaining only to the child, unborn Brooks, ... is set aside...." The record discloses no jurisdictional basis for the order.
Other points raised by respondent are also tangential to the question of whether both new facts and diligence were shown. At the later reconsideration hearing, respondent argued that the juvenile court records were confidential and not available to him. This is demonstrably incorrect because, at the time of the second reconsideration hearing, respondent was still the legal father of the minor child. He could have had access to the juvenile court file under the applicable provisions of the Welfare and Institutions Code. (See Welf. & Inst.Code, §§ 312; 827, subd. (a)(1)(d) & (e).) Moreover, the court's original opinion in January of 1998 noted that the paternity inquiry had been made by the juvenile court and answered by the district attorney.
At the second hearing on May 7, 1998, the court again rejected the contention that specified Family Code sections including section 7575, could apply to these facts. The court reasoned that "there are very specific requirements by statute in order for an item to be considered a voluntary paternity declaration. Those are not met here. They require a specific form prepared by the Department of Social Services that was not the form used here. [¶] It is also required under section 7574 that there be these very specific statements, advisements and waivers of rights under particular sections by both the mother and father, and there are also very specific remedies that otherwise are not available for stipulated judgment." The trial court was right when it determined that, as a matter of law, Family Code section 7575, and related sections, describe a procedural mechanism wholly different from a stipulated *36 judgment of paternity in a case commenced by the filing of a complaint. The difference is most easily demonstrated by the existence and wording of the statutes themselves.
Counsel for the minor (who was appointed with reference to the dependency proceedings) contended at the reconsideration hearing that Bernstein v. Consolidated American Ins. Co. (1995) 37 Cal.App.4th 763, 774, 43 Cal.Rptr.2d 817 stands for the proposition that Code of Civil Procedure section 1008 does not affect the trial court's "`... complete power to change its decision as the court may determine....'" Such an argument cannot be reasonably based upon a reading of our decisions in Gilberd and Hejmadi discussed above, and turns the forthright holding of Baldwin Hills on its head. Based on dubious citations of older cases, counsel for the minor claimed "there is a split in the Court of Appeal as to whether or not it is jurisdictional." We discern no such split in the courts and have ourselves stated that the requirements of Code of Civil Procedure section 1008 are jurisdictional. (Baldwin v. Home Savings of America, supra, 59 Cal.App.4th 1192, 69 Cal.Rptr.2d 592, Garcia v. Hejmadi supra, 58 Cal.App.4th at p. 686, 68 Cal. Rptr.2d 228, and Gilberd v. AC Transit, supra, 32 Cal.App.4th 1494, 38 Cal.Rptr.2d 626.) No new legal or factual grounds were presented to justify reconsideration of the original order denying the motion to set aside the paternity judgment. Accordingly the court had no jurisdiction to change its order.
Respondent raises two other arguments:
First, respondent's counsel contended for the first time at the hearing of his motion to reconsider that he could not have effectively waived his right to blood testing before the child's birth because the child had not been born. Accordingly, he again urges on appeal, that he has been deprived of due process of law. In support of this argument respondent cites United Public Workers v. Mitchell (1946) 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754.
All of the authorities cited in support of this new argument existed prior to the earlier reconsideration motions. Counsel for respondent provided no reason why he could not have advanced this argument when the motion was first considered. Appellant's citation of Baldwin v. Home Savings of America, supra, 59 Cal.App.4th 1192, 69 Cal.Rptr.2d 592 is apt: "If counsel need not explain the failure to earlier produce pertinent legal authority that was available, the ability of a party to obtain reconsideration would expand in inverse relationship to the competence of counsel. Without a diligence requirement the number of times a court could be required to reconsider its prior orders would be limited only by the ability of counsel to belatedly conjure a legal theory different from those previously rejected, which is not much of a limitation." (Id. at p. 1199, 69 Cal.Rptr.2d 592.)
Secondly, respondent claims that the trial court "correctly" set aside the paternity order "in deference" to the juvenile court's implied finding that it was in the best interest of the child to know if respondent was his father. This contention presumes the relevance of the order for blood testing and is based upon speculation that the order must have been issued out of the concern that the minor should know the true identity of his father. What the trial judge said was "[t]he fact of the matter is that the court now has a chance to do equity. It can do that under Family Code section 7575, subsection 4, and under many other provisions of the Civil Code. It is always the role of the court to do equity and, I might say, and I do say, that is also the role of the People, through the district attorney, to also see that justice is done and to see that the true facts are brought out into the light, and the necessary consequences of those facts should flow. [¶] ... I am going to find that the stipulated judgment should be set aside for reasons grounded primarily in equity."
*37 The trial judge's desire "to do equity" might be considered admirable, but it is nevertheless error under these circumstances. As the judge correctly noted in her first denial of the motion to set aside the judgment, the precedents are clear (and highlighted by subsequently depublished contrary cases) that subsequent genetic testing is not sufficient to set aside an otherwise valid paternity judgment in the absence of extrinsic fraud. Neither the law nor the relevant facts were shown here to have changed between the time of the trial court's first denial of the motion and the time of the second motion for reconsideration under Code of Civil Procedure section 1008. The requirements of "new" facts, circumstances or law are jurisdictional, and the trial court was without power to act beyond that jurisdiction. Neither new facts nor diligence on the part of trial counsel was shown with reference to the second motion. The trial court based its ruling on the provisions of Code of Civil Procedure section 1008 and this appeal is limited to the issues thus presented. Respondent's efforts to interject new issues must remain unavailing.

DISPOSITION
The trial court's order setting aside the judgment declaring respondent to be the father of the minor child is reversed. Appellant is entitled to costs on appeal.
HALE, Acting P.J., and RUVOLO, J., concur.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).