*Supp. 15 Opinion
SHABO, J.
Appellant, a hearing-impaired person, pleaded guilty to a violation of section 22348, subdivision (a) of the Vehicle Code (driving in excess of 55 miles per hour). He requested that the court refer him to traffic school and that the court appoint an oral interpreter on his behalf, at public expense, to enable him to understand the proceedings conducted at the traffic school.[1] In ruling upon appellant’s motion the court accepted appellant’s declaration in support thereof as well as appellant’s offer to prove that in an “average” traffic school classroom situation his “comprehension would approximate 20 to 30 percent, which would preclude his gaining any meaningful comprehension.” The court accepted as well counsel’s offer to prove by his own testimony that there are several thousand traffic schools in the State of California and that an official of the Greater Los Angeles Area Council on Deafness had found no traffic school willing to pay for an interpreter or to make an alternative program available which would allow comprehension; further, the court accepted the fact that having the conviction for a traffic violation on appellant’s record could have an impact eventually upon appellant’s insurance.
As additional offers of proof, the court accepted the following: That the burden of placing him in an eight-hour silent situation would have a greater impact upon appellant and place a heavier burden upon him than upon a hearing person; that there are no free deaf interpreter services available to appellant or to the deaf community at large for the purpose of traffic school attendance; and that appellant’s long time interpreter would testify that she had no intention or desire to assist appellant at traffic school free of charge.
After an extensive hearing, the court denied appellant’s motion. The court impliedly concluded that it was under no statutory duty pursuant to Government Code section 11135 to provide interpreter services for the hearing impaired, and that, on a rational relationship basis no equal protection vi *Supp. 16 olation resulted from the court’s refusal to supply an interpreter at public expense.[2]
1. Government Code section 11135 and the administrative regulations adopted pursuant thereto do not require appointment at public expense of an interpreter by the municipal court.
On appeal appellant contends that the trial court’s ruling was erroneous and must be reversed. He relies upon Government Code section 11135, which is a part of article 9.5 of the code entitled “Discrimination,” the administrative regulations adopted pursuant to Government Code section 11139.5, and the equal protection guarantees of the federal and state Constitutions. For the reasons which follow, we conclude that appellant’s contentions lack merit.
Section 11135 provides as follows: “No person in the State of California shall, on the basis of ethnic group identification, religion, age, sex, color, or physical or mental disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the State.” (Italics added.) Although no judicial decision has as yet interpreted section 11135, administrative regulations adopted by the Secretary of the Health and Welfare Agency, with the advice and concurrence of the Fair Employment Practices Commission, have been promulgated pursuant to section 11359.5 of the Government Code in order to enforce the provisions of article 9.5.[3]
*Supp. 17 Urging that the municipal court is bound by section 11135 of the Government Code because it allegedly receives state funding by way of judicial salaries, judicial retirement funds and various grants and payments (which appellant does not specify), and that the courts are undoubtedly a “program or activity” which receives financial assistance from the state, and further because the courts are authorized pursuant to Vehicle Code section 42005 to allow attendance to qualified traffic law violators in lieu of payment of a penalty for their infractions, appellant reasons that logic and necessity require the court to administer the discretionary traffic-school referral in a nondiscriminatory fashion.
The issue presented by appellant’s contention is whether the municipal court’s discretionary referral to traffic schools constitutes a “program or activity” within the meaning of Government Code section 11135.[4] In view of the administrative regulations implementing this section, and the express language of the section itself, we are constrained to hold that section 11135 does not include such referrals. In reaching our conclusion we are mindful of the legislative mandate that article 9.5 of the Government Code “shall not be interpreted in such a manner so as to frustrate its purpose.” (Gov. Code, § 11139.) Nonetheless, under familiar rules of statutory construction, courts must give statutes a reasonable construction which conforms to the Legislature’s apparent intent and purpose, and should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (Clean Air Constituency v. California State Air Resources Bd. (1974) 11 Cal.3d 801, 813-814 [114 Cal.Rptr. 577, 523 P.2d 617].) In ascertaining legislative intent and purpose courts are aided by the rule that the objectives sought to be achieved by a statute as well as the evil to be prevented are the primary consideration in its interpretation. (Wotton v. Bush (1953) 41 Cal.2d 460, 467 [261 P.2d 256].) In determining this consideration courts must construe the statute with reference to the entire scheme of law of which the statute is a part (Clean Air Constituency v. California State Air Re *Supp. 18 sources Bd., supra, at p. 814) and must consider contemporaneous administrative construction unless such construction is clearly erroneous. (Wotton v. Bush, supra, at p. 466; Killian v. City and County of San Francisco (1978) 77 Cal.App.3d 1, 12 [143 Cal.Rptr. 430].)
In examining the foregoing factors we conclude that the apparent legislative purpose and intent in enacting Government Code section 11135 et seq. was to prohibit discriminatory treatment of any person on the basis of categories described in section 11135 only by those charged with effectuating programs or activities which receive directly or indirectly state support. This conclusion is compelled by the fact that section 11135, which commences article 9.5 of chapter 1, part 1 of division 3 of title 2 of the Government Code, falls within the chapter dealing with state agencies. None of chapter l’s provisions apply either expressly or impliedly to the municipal court. Indeed, title 2 of the Government Code was enacted to create, organize and regulate only the government of the State of California.[5] Thus, the statutory scheme lends no support to appellant’s argument that the Legislature intended the municipal courts to come within the ambit of article 9.5.
That the Legislature intended only to prohibit discriminatory practices by those implementing state-assisted programs and activities is further evidenced by reference to the other statutory provisions contained within article 9.5. For example, both sections 11136 and 11138 limit operation of their provisions to “a program or activity that is funded directly by the State or receives any financial assistance from the State”; section 11137 requires a state agency that administers a program or activity which has been determined to violate the provisions of this article to “take action to curtail State funding in whole or in part to such contractor, grantee, or local agency.” Finally, the administrative regulations adopted pursuant to 11139.5, as previously noted, specifically defined “recipient,” “State support” and “State financial assistance” in a manner which makes clear that a “recipient” governed by the provisions of section 11135 must be one who receives “State support” directly or through another recipient.[6]
*Supp. 19 Although the municipal court would seem to come within the administrative definition of “local agency” contained in section 98010[7] fulfillment of that definition does not fulfill the further requirement that the court administer a “program or activity” that is funded by the state or receives state financial assistance. The record before us does not demonstrate the traffic school referrals as an alternative to the payment of fine qualifies as such a program or activity within the meaning of section 11135. There is no evidence in the record to show any state assistance whatsoever to the traffic schools or to the municipal court to support or encourage in any manner exercise of its referral power under Vehicle Code section 42005. Indeed, under section 42005 a traffic law violator is free to choose the school which he wishes to attend, and appellant concedes that the schools are financially sustained by the enrollment fees collected from persons who attend them.
In Alcorn v. Anbro Engineering, Inc. (1970) 2 Cal.3d ¡493 [86 Cal.Rptr. 88, 468 P.2d 216] the Supreme Court was confronted with the question whether the Unruh Civil Rights Act (Civ. Code, §§ 5L52) authorized a lawsuit by an employee who claimed that he had been discharged on the basis of racial discrimination. The employee argued that section 51’s requirement of “full and equal accommodations, advantages, facilities, privileges, or services in all business establishments” regardless of “color, race, religion, ancestry, or national origin” protected him from employment discrimination. A unanimous Supreme Court rejected the claim. The court reasoned that the Legislature gave no indication of its intention to broaden the scope of section 51 to include discriminations other than those made by a “business establishment” in the course of furnishing goods, services or facilities to its clients, patrons or customers. The court,therefore upheld an order sustaining the defendant’s demurrer to that portion of the complaint purporting to set forth a cause of action based upon the alleged violation of the Unruh Civil Rights Act. Likewise, we are constrained to hold that the Legislature gave no indication in enacting section ,11135 that it intended to include within the statute’s scope the municipal court in the exercise of its power to refer traffic law violators to a traffic school. Neither the court nor the traffic schools implement programs or activities which are state sup *Supp. 20 ported or receive state financial assistance, as those terms have been administratively defined.[8]
2. Appellant has suffered no equal protection violation.
Appellant claims that in refusing to appoint at public expense an interpreter to attend traffic school with him, the court below acted to deprive him of equal protection of the laws by denying him the right to benefit from the instruction offered to the same degree as others suffering no hearing impairment who are ordered to attend traffic school. Appellant’s contention cannot be sustained.
A. Appellant’s showing of need was insufficient.
We first observe that appellant made no showing of indigency nor of the unavailability of an interpreter’s services by alternative means. The law is clear that a motion to appoint an expert for purposes of trial under Evidence Code section 730 is addressed to the sound discretion of the trial court. (Torres v. Municipal Coup (1975) 50 Cal.App.3d 778, 784 [123 Cal.Rptr. 553].) Evidence Code section 730 does not grant a defendant in a criminal case an absolute right to the appointment of an expert on his behalf. (People v. Vatelli (1971) 15 Cal.App.3d 54, 61 [92 Cal.Rptr. 763].) To justify such appointment a defendant must show a need for the expert’s services. (People v. Hurley (1979) 95 Cal.App.3d 895, 899 [157 Cal.Rptr. 364]; Collins v. Superior Court (1977) 74 Cal.App.3d 47, 52 [141 Cal.Rptr. 273]; People v. Berry (1962) 199 Cal.App.2d 97, 104-105 [18 Cal.Rptr. 388], Assuming arguendo that the trial court had an inherent or statutory power to appoint an interpreter for appellant’s benefit, we believe that the exercise of such power rested within the sound discretion of the trial court and that appellant’s failure to show a lack of alternative sources for assistance and his own indigence precludes him successfully from urging a right at public expense to such assistance. (Jara v. Municipal Court (1978) 21 Cal.3d 181, 184, 186 [145 Cal.Rptr. 847, 578 P.2d 94]; cf. Payne v. Superior Court (1976) 17 Cal.3d 908, 916-917 [132 Cal.Rptr. 405, 553 P.2d 565].)[9]
*Supp. 21 In Jara v. Municipal Court, supra, 21 Cal.3d 181, a majority of the Supreme Court held that a non-English-speaking indigent civil litigant, as a matter of equal protection, does not have the right to appointment at public expense of an interpreter skilled in his native language and in English. The Supreme Court reasoned that the alternatives open to such a litigant in contemporary urban society, in which non-English-speaking individuals. have access to a variety of sources for language assistance, such as family members, friends or neighbors, may provide such aid and that private organizations also exist for this purpose. Similarly, in the case at bench appellant made no showing that family, friends, neighbors or voluntary organizations, such as the Greater Los Angeles Area Council on Deafness, Inc. (which had provided assistance to appellant’s counsel with regard to the lack of access to the hearing impaired provided by traffic violators’ schools in Southern California) were unavailable to assist appellant to obtain a meaningful educational experience at traffic school. The insufficiency of appellant’s showing of need therefor constitutes a sufficient basis for concluding that the trial court properly denied his motion.
B. The trial court’s order did not result in unlawful discriminatory treatment of appellant under the federal and state Constitutions.
Concerning appellant’s equal protection claim, we are of the view that the trial court’s order denying him appointment of an interpreter did not deprive him of his right to equal protection of the laws.
Attendance at traffic school is discretionary with the traffic law violator, who may wish to pay a fine, and with the court. (Veh. Code, § 42005.) Unlike the fundamental right to a free public education (Serrano v. Priest (1971) 5 Cal.3d 584, 604-610 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]), the goals furthered by traffic school instruction have no relationship to the maintenance of a democratic society or to socioeconomic opportunity. (Cf. Serrano v. Priest, supra.)
We conclude that the trial court correctly found, in light of appellant’s showing of speculative detrimental impact upon his license to drive and insurance rates, that the court was under no duty to supply appellant as a matter of equal protection an interpreter’s services at public expense. (Cf. Department of Motor Vehicles v. Superior Court (Hardin) (1976) 58 *Supp. 22 Cal.App.3d 936 [130 Cal.Rptr. 311]; see, also, Talley v. Municipal Court (1978) 87 Cal.App.3d 109 [150 Cal.Rptr. 743].)
The order denying appointment of an interpreter for traffic violator school is affirmed.
Reese, P. J., and Bernstein, J., concurred.

 Appellant, represented by counsel, filed written briefs in support of his request. In a declaration under penalty of perjury he explained that he is profoundly hearing impaired (deaf), that he needs to rely upon visual cues to receive any kind of auditory input, and that he uses speech reading, which consists of reading lips, facial expressions and combinations of movements to ascertain what is being said. After specifying various factors which appellant contended would affect his ability to understand in a classroom setting, he declared that in order to benefit from any school class he would need an interpreter, who, through education and experience, is proficient in minimizing and eliminating whenever possible any adverse effects. Appellant claimed that without an interpreter his comprehension of what the speaker might say could range from ten to ninety percent depending upon the presence of these factors and that, in a classroom setting, the lower end of the scale would be more prevalent. Appellant stated that the interpreter whom he presently used at work would be a most effective person to use in a traffic school class for various reasons which he set forth.

 Essentially the court reasoned that, although everyone has a right to be treated equally irrespective of physical or mental impairment, it was not unreasonable to ask appellant to supply an interpreter at his own cost in light of the relatively slight penalties involved for his Vehicle Code infraction, the fact that the traffic school program was discretionary, and that appellant had not shown an immediate detrimental effect either upon his insurance or upon his driving privilege as a result of his conviction.

 These regulations are found in title 22 of the California Administrative Code. Section 98101 defines a “discriminatory practice” as including a recipient’s “carrying out any program or activity directly, or through contractual, licensing or other arrangements, on the basis of ethnic group identification, religion, age, sex, color, or a physical or mental disability ...(c) to provide a person with an aid, benefit or service that is not as effective in affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others. In some situations, identical treatment may be discriminatory . . . .” Section 98010 of title 22 defines “program or activity” as “any project, action or procedure undertaken directly by recipients of State support or indirectly by recipients through others by contracts, arrangements or agreements, with respect to the public generally or with respect to any private or public entity. Such programs or activities include, but are not limited to, . . . the provision of education, training, health, welfare, rehabilitation, housing, or other services . . . .” Section 98253 further defines a discriminatory practice as being one in which “a recipient of State support fails to take appropriate steps to insure that communications with their applicants and beneficiaries *Supp. 17 are available to persons with impaired vision or hearing.” Section 98211, subdivision (c) of title 22 further defines as a “discriminatory practice” a recipient’s failure “to take appropriate steps to ensure that alternative communication services are available to ultimate beneficiaries, except where the State agency determines that such a requirement would place an undue hardship on the recipient. ”
“Recipient” is defined by section 98010 of title 22 as “any contractor, local agency, or person, who regularly employs five or more persons and who receives State support, as defined in this Section, in an amount in excess of $10,000 in the aggregate per State fiscal year or in an amount in excess of $1,000 per transaction, by grant, contract or otherwise, directly or through another recipient, including any successor, assignee or transferee of a recipient, but excluding the ultimate beneficiary of the State support." ‘Recipient’ does not include State agencies. However, State agencies may look to this Division for guidance in the administration of their programs and activities.” (Italics added.)

 Appellant's reliance upon the assertion that the municipal court receives state-funding for salaries of judges is erroneous. Salaries of municipal court judges are in fact a charge exclusively borne by the counties under Government Code section 71220.

Title 8 of the Government Code, of course, provides for the organization and government of courts in this state; chapter 8, commencing with section 72000, deals with the municipal courts.

See footnote 3, ante, for definition of “recipient” under section 98010 of title 22 of the California Administrative Code.
Section 98010 additionally defines “State support” as: “the funds or financial assistance provided by the State to a recipient which:
(1) is ‘Funded directly by the State’ as defined in this Section; or
(2) receives ‘State financial assistance’ as defined in this Section.”
“ ‘State financial assistance’ ” is defined as: “any grant, entitlement, loan, cooperative *Supp. 19 agreement, contract or any other arrangement by which a State agency provides or otherwise makes available aid to recipients in the form of: •
(1) funds;
(2) services of State personnel; or
(3) real or personal property or any interest in or use of such property, including:
(A) transfers or leases of property for less than fair market value or for reduced consideration; or
(B) proceeds from a subsequent transfer or lease of property.if the. State share of its fair market value is not returned to the State.”

“Local agency” means a “public district, public corporation, authority, agency, board, commission, county, city and county, school district, or other public entity.”

 Although appellant appears to contend that the Department of Motor Vehicles, in the exercise of its licensing authority over traffic schools, furnishes state assistance or support, section 98010 of title 22 does not include licensing within the definitions of “State financial assistance” or “State support.” Moreover, as a state agency, the Department of Motor Vehicles is excluded from the definition of “recipient” under section 98010.

 Evidence Code section 730 authorizes a court, “at any time before or during the trial of an action,” (italics added) to appoint an expert to investigate, to render a report, and to testify as an expert at the trial. Evidence Code section 752 authorizes a court to appoint an interpreter for a witness incapable of hearing or understanding the English language or of expressing himself in English so as to be understood. Evidence Code section 754 authorizes *Supp. 21 appointment of an interpreter for a deaf person in any proceeding in which a party or witness who is deaf is required to be present. All of these sections limit the court’s statutory power of appointment to the trial. It seems to us that in a situation such as that at bench, in which the court’s power of appointment for a purpose not directly directed to judicial proceedings is questionable at best, the party making the request should have to make a greater showing of need than he would if making the request for trial purposes. Appellant has made no such showing.