*1121 Opinion
FLIER, J.
This lawsuit concerns a community organization’s—Comunidad en Acción (Comunidad)—challenge under the antidiscrimination statute in Government Code section 11135 (section 11135) to the City of Los Angeles’s (City) siting of waste facilities in Sun Valley. We affirm the summary adjudication of the section 11135 claim because Comunidad failed to raise a triable issue of material fact supporting the inference the City’s siting decision subjected residents of Sun Valley to discrimination under “any program or activity that is . . . funded directly by the state, or receives any financial assistance from the state.” (§ 11135, subd. (a).)
Comunidad also challenged the waste facilities under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). We reverse the dismissal of Comunidad’s CEQA claims. The trial court abused its discretion in dismissing the claims based on Comunidad’s one-week delay in requesting a hearing. Even though CEQA requires the expedited prosecution of claims arising under it, a trial court may grant a motion for discretionary relief based on excusable neglect. The trial court should have granted Comunidad’s motion for such relief.
FACTS AND PROCEDURE
The genesis of this lawsuit is the City’s approval of waste facilities in Sun Valley, where Comunidad alleges the predominately Latino residents are subjected to a disproportionate amount of pollution. On May 11, 2010, the Los Angeles City Council (City Council) certified an environmental impact report (EIR) and approved Waste Management Recycling and Disposal Services of California, Inc.’s (Waste Management) request to build a new 104,000-square-foot solid waste transfer station, an expanded materials recycling facility, and an expanded green waste processing center (collectively the challenged facilities) at the Bradley Landfill site in Sun Valley. The challenged facilities all fall within the definition of solid waste facilities. (Pub. Resources Code, § 40194.)
The City’s planning department (Planning Department) acted as the lead agency responsible for preparing documents to ensure compliance under the CEQA. The City’s Planning Department also processed the applications and approvals. The City did not consider siting the challenged facilities in another location.
1. The Complaint
After the City approved Waste Management’s request to build the challenged facilities, Comunidad sued the City and the City Council, naming *1122 Waste Management as real party in interest. The complaint, styled both as a petition for writ of mandate and a complaint for declaratory and injunctive relief, was filed on June 10, 2010. The lawsuit sought to prevent the construction of the challenged facilities in Sun Valley where members of Comunidad live.
Comunidad described the defendants as follows: “Los Angeles City Council (City Council) is the governing body of the City of Los Angeles and the lead agency that approved the construction and operation of the [challenged facilities].” According to Comunidad, the approval of the challenged facilities “has the intended and unintended effect of subjecting the residents of Sun Valley to substantially more air and groundwater pollution, and more truck traffic, odor, noise, trash and vermin than most or all other parts of the City.”
2. The Section 11135 Claim
To show unlawful discrimination under section 11135, Comunidad was required to show that the discriminatory “program or activity ... is funded directly by the state, or receives any financial assistance from the state.” (§ 11135, subd. (a).)
In its complaint, Comunidad alleged: “The City Council’s approval of the [challenged facilities] violates Government Code § 11135 in that the adverse effects of the [challenged facilities] will disproportionately impact a community that is predominately Latino. The City Council’s approval of the [challenged facilities] subjects plaintiffs and other Sun Valley minority residents to discrimination by locating the [challenged facilities] in an area with predominately Latino residents.” Comunidad alleged that “the City of Los Angeles receives funding from the State of California to operate and administer its waste disposal and management programs . . . .” Comunidad sought an injunction prohibiting the construction and operation of the waste facilities because, according to Comunidad, building them in Sun Valley constituted unlawful discrimination. It sought a “judicial determination and declaration of plaintiffs’, defendants’ and real part[y’s] respective rights and duties concerning the construction and operation of the [challenged facilities].”
The City’s Planning Department is responsible for siting recycling and solid waste facilities. Comunidad did not show that any conduct related to the challenged facilities by the City’s Planning Department was funded by the state. Comunidad presented evidence that the City’s local enforcement agency (LEA), which currently is housed in the City Department of Building and Safety received state funding.
The LEA is responsible for enforcing state, federal, and local law with respect to the collection, handling, storage and disposal of waste. The LEA *1123 also oversees permitting solid waste facilities. The LEA is staffed by full-time City employees. To show that the City received state funding, Comunidad relied on the LEA’s receipt of landfill grants from 2001 to 2011. For the last decade, California’s Department of Resources Recycling and Recovery (CalRecycle)—a state agency—or its predecessor gave the LEA over $50,000 a year to operate the LEA’s waste management program. Among other things, these funds have been used to purchase items used for inspections such as clothing, machinery, and tools; and it is undisputed such inspections would occur at the challenged facilities if they are constructed. To conduct such inspections, inspectors would use equipment and gear purchased with state funds.
The LEA used CalRecycle and other funds to pay for the services of Eugene Tseng and Associates. Among other things, Tseng and Associates reviewed the proposed design of the challenged facilities to make sure the facilities would meet state requirements and reviewed the EIR approved by the City. Tseng and Associates provided input on the permit the LEA issued in July 2010, a permit which was not challenged in the complaint.
The City’s solid waste management policy plan identifies 25 agencies that have a role in the success of the City’s integrated waste management plan. The plan describes the Planning Department as follows: “The City Planning Department prepares and maintains a general plan for the development of the City including elements such as land use and service systems. Privately-owned property is regulated through zoning regulation^], specific plan ordinances, and State laws. Responsible for approval of sites to be used for recycling and solid waste facilities. This agency is responsible for the development of the City’s General Plan.” The City Environmental Affairs Department (Environmental Affairs Department) was described as follows: “Designated as the local enforcement agency (LEA) for solid waste facilities located within the City, both public and private.” As noted, the Department of Building and Safety now houses the LEA, not the Environmental Affairs Department.
3. Summary Adjudication of the Section 11135 Claim
The trial court granted summary judgment on the section 11135 claim because it concluded that the City’s zoning and land use decisions were not a state funded program or activity.[1] The trial court found persuasive respondents’ argument that because the “LEA was not involved in the granting of the challenged Project Approvals . . . any state funds paid to the LEA do not *1124 implicate Section 11135.” In short, the trial court concluded Comunidad failed to carry its burden of showing discrimination in a state funded “program or activity,” as that phrase is used in section 11135.
The trial court further concluded it did not need to consider Comunidad’s motion for summary adjudication, which sought summary adjudication of the section 11135 claim on the ground that “defendants City of Los Angeles and City Council have received substantial state funding annually to operate the City’s waste management program and thus have a duty to comply with Government Code § 11135.” Comunidad does not challenge the denial of its motion for summary adjudication in this appeal.
4. The Dismissal of the CEQA Claims
The CEQA claims followed a different track. On November 12, 2010, the court issued an order granting the City and Waste Management’s motion to dismiss the CEQA claims. The court dismissed the CEQA causes of action because Comunidad’s counsel failed to request a hearing within 90 days as required by Public Resources Code section 21167.4. Comunidad sought relief under Code of Civil Procedure section 473, but the trial court denied relief, finding no excusable neglect.
DISCUSSION
1. Comunidad’s Section 11135 Cause of Action
Comunidad contends that the “approval to expand [the Bradley Landfill] and site the three challenged facilities on the closed Bradley Landfill is an integral part of the City’s waste management program.” Further, according to Comunidad, the LEA is a part of the City’s waste management program and because it received state funding the trial court erred in summarily adjudicating the section 11135 cause of action.
We conclude that the state grants made to the LEA do not raise a triable issue of material fact indicating that the alleged violations of section 11135 were part of a City program receiving state funding. To explain our conclusion, we first quote section 11135 and its implementing regulations, then review the key allegations in the complaint and critical facts, all of which are undisputed. Finally, we discuss the nature of a local enforcement agency and conclude its identity is separate from the City, even though in Los Angeles it is housed within a City department and staffed with City employees.
*1125 A.
Section 11135, subdivision (a) provides; “No person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, genetic information, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state.”
California Code of Regulations, title 22, section 98010 provides the definition of “program or activity” as used in section 11135: “ ‘Program or activity’ means any project, action or procedure undertaken directly by recipients of State support or indirectly by recipients through others by contracts, arrangements or agreements, with respect to the public generally or with respect to any private or public entity. Such programs or activities include, but are not limited to, the provisions of employment or goods; the procurement of goods or services; the provision of education, training, health, welfare, rehabilitation, housing, or other services; the provision of cash or loan assistance; or the provision of facilities for furnishing services, financial aid or other benefits. The services, financial aid or other benefits provided under such programs or activities shall be deemed to include: [ft] (1) any services, financial aid or other benefits provided with the aid of State support, or with the aid of other funds or resources required to be expended or made available for the program to meet matching requirements or other conditions which must be met in order for the recipients to receive the State support; or [ft] (2) any service, financial aid or other benefit provided in or through a facility which is or was provided with the aid of State support or other funds or resources.”
B.
Review of the allegations underlying Comunidad’s section 11135 complaint is essential because the complaint delineates the scope of issues before a court on summary judgment. (Bosetti v. United States Life Ins. Co. in City of New York (2009) 175 Cal.App.4th 1208, 1225 [96 Cal.Rptr.3d 744].) “ ‘[A] party cannot successfully resist summary judgment on a theory not pleaded.’ ” (Ibid., quoting Whelihan v. Espinoza (2003) 110 Cal.App.4th 1566, 1576 [2 Cal.Rptr.3d 883].)
The complaint alleged the following violation of section 11135: “The City Council’s approval of the [challenged facilities] violates Government Code § 11135 in that the adverse effects of the [challenged facilities] will disproportionately impact a community that is predominately Latino. The City *1126 Council’s approval of the [challenged facilities] thus subjects plaintiffs and other Sun Valley minority residents to discrimination by locating the [challenged facilities] and expansion of the greenwaste processing in an area with predominantly Latino residents.” On appeal, Comunidad argues “[t]he complaint more than adequately apprises defendants that the City’s decision to place three polluting waste facilities in the predominantly Latino community of Sun Valley discriminates against racial or ethnic minorities.”
As the complaint and Comunidad’s argument make clear, the City’s siting decision was the basis for Comunidad’s discrimination claim. The complaint and argument also make clear that the section 11135 cause of action was not based on any conduct by the LEA. This conclusion is further confirmed by Comunidad’s motion for summary adjudication, which states: “This action challenges Los Angeles City’s . . . approval of three waste facilities in the predominately Latino community of Sun Valley .... By locating these polluting facilities in Sun Valley, rather than in a community with fewer minorities, the City is violating Government Code § 11135 . . . , which prohibits the City, as a recipient of state funds, from implementing a program or activity in a way that disparately impacts anyone based on race, national origin or ethnicity.” The trial court therefore properly focused on the City’s siting decision in evaluating Comunidad’s section 11135 cause of action. California Code of Regulations, title 22, section 98101, subdivision (j) further supports this analysis by making clear that the selection of sites may support a section 11135 cause of action.[2]
C.
The remaining issue is whether the City’s Planning Department is part of a comprehensive waste management program such that receipt of state funds by the LEA demonstrates receipt of funds by the City. To resolve that question, background into the nature of a local enforcement agency and the laws governing the City’s waste management is necessary.
To effectuate its purpose of reducing, reusing, and recycling solid waste, the California Integrated Waste Management Act of 1989 (Act) required local governments to develop integrated waste management programs. (Pub. Resources Code, §§ 40050, 40052.) “The Legislature intended *1127 to establish a ‘comprehensive program for solid waste management’ . . . .” (Waste Resource Technologies v. Department of Public Health (1994) 23 Cal.App.4th 299, 305 [28 Cal.Rptr.2d 422].) Initially, the California Integrated Waste Management Board oversaw the implementation of the Act, but the board has since been replaced by CalRecycle. (Pub. Resources Code, § 40400.) CalRecycle’s responsibilities include approving the integrated waste management plans that all cities and counties must prepare (Pub. Resources Code, §§ 41750, 41800), regulating closed and active landfills (Pub. Resources Code, §§ 43500-43606), and administering a fund taking in $20 million annually (Pub. Resources Code, §§ 47901-48008). CalRecycle is empowered to enforce the Act using a number of corrective actions including cease and desist orders, cleanup orders, and civil penalties. (Pub. Resources Code, §§ 43300, 45000, 45014.)
The Act permits local governments to establish local enforcement agencies. (Pub. Resources Code, § 43200.) Local enforcement agencies have two primary responsibilities—to enforce CalRecycle’s rules regarding solid waste handling and to issue permits when such permits comply with CalRecycle’s standards. (Pub. Resources Code, § 43209.) “The local enforcement agency has broad duties and powers (§ 43209) including the investigation of permit violations (Cal. Code Regs., tit. 14, § 18303), temporary suspension of permits ([Pub. Resources Code,] § 44305, subd. (a)), issuance of cease-and-desist orders (§ 45005), assessment of civil penalties (§ 45011), issuance of notices and orders requiring permit violations be remedied (§ 45000, subd. (a); Cal. Code Regs., tit. 14, § 18304), and in the absence of correction, initiation of judicial proceedings. (Cal. Code Regs., tit. 14, § 18304.)” (San Elijo Ranch, Inc. v. County of San Diego (1998) 65 Cal.App.4th 608, 613 [76 Cal.Rptr.2d 601].)
In order for the solid waste facility to operate, the local enforcement agency must issue a permit. (Pub. Resources Code, §§ 43209, 44001.) A member of the public may request the local enforcement agency to hold a hearing to consider claims that the agency failed “to act as required by law or regulation.” (Pub. Resources Code, § 44307.) “The hearing is heard by a hearing panel or officer appointed by the local ‘ “governing body” ’ . . . . ([Pub. Resources Code,] § 40150; see § 44308.) The decision from this hearing may be appealed to CalRecycle (§ 45030, subd. (a)) and an individual dissatisfied with CalRecycle’s decision ‘may file with the superior court a petition for a writ of mandate for review thereof.’ (§ 45040, subd. (a).)” (No Wetlands Landfill Expansion v. County of Marin (2012) 204 Cal.App.4th 573, 582 [138 Cal.Rptr.3d 873] (No Wetlands).) A local enforcement agency cannot approve a permit without input from CalRecycle. (Id. at p. 581.)
CalRecycle supervises local enforcement agency’s and evaluates their processes. (Pub. Resources Code, §§ 43214, subd. (d), 43220.) CalRecycle may *1128 withdraw approval for a local enforcement agency. (Pub. Resources Code, §§ 43215, 43216.) If that occurs, either the local government shall designate a new enforcement agency or CalRecycle shall become the enforcement agency in the same jurisdiction as the former local enforcement agency. (Pub. Resources Code, § 43216.)
One court has described the relationship between a local enforcement agency and the board of supervisors of a city as follows: the local enforcement agency has an “independent legal existence.” (No Wetlands, supra, 204 Cal.App.4th at p. 586.) The No Wetlands court held that because the Marin County local enforcement agency had an independent legal existence its decision to approve an EIR could not be appealed to the Marin County Board of Supervisors even though the enforcement agency operated within the county bureaucracy. (Ibid.)
Applying these principles, the LEA is separate from the City and subject to control by CalRecycle, not the City. The LEA’s permit decisions must be reviewed by CalRecycle, not by the City. The LEA provided no input in the siting of the waste facilities. Although the LEA provided - input on the construction of the green waste processing center, its recommendation was ignored. Additionally, the LEA must issue a separate permit from the one challenged in the complaint in order for the challenged facilities to be built. (Pub. Resources Code, § 44002.) The CalRecycle grant funds received by the LEA were designated to be used only for carrying out “solid waste facilities permit and inspection program.”[3] (Cal. Code Regs., tit. 14, § 18090.0.) In short, the City’s designation of 25 agencies and departments as part of an integrated waste management policy plan does not show that the agencies are part of a combined “program or activity” as used in section 11135.
Describing the City’s entire waste management program as a “program or activity” would require finding that state funds provided to any of the following departments, all of which are included in the City’s integrated waste management plan, would constitute funding of the waste management program: the airport department; the board of public works; the hazardous and toxic materials office; the integrated solid waste management office; the Legislative Analyst; the Planning Department; the community development department; the community redevelopment agency; the convention and exhibition center authority; the cultural affairs department; the department of water and power; the department of public works, bureau of engineering; the department of public works, bureau of sanitation, recycling and waste *1129 reduction division; the department of public works, bureau of sanitation, refuse and collection division; the department of public works, bureau of sanitation, refuse disposal division and solid waste management division; the department of public works, bureau of sanitation, wastewater collection and treatment; the department of public works, bureau of street maintenance; the Environmental Affairs Department; the general services department; the harbor department; the housing authority; the housing preservation and production department; the library; the police department; and the recreation and parks department. Such a broad interpretation of “program or activity” is inconsistent with section 11135 or its implementing regulations.
Although the claim that the LEA’s programs and the City’s programs on waste management are inextricably intertwined is persuasive in that the City needs the LEA to carry out its waste management plan, their interrelatedness does not show that they are the same for purposes of applying the antidiscrimination statute. (Cf. Department of Transp. v. Paralyzed Veterans (1986) 477 U.S. 597, 610 [91 L.Ed.2d 494, 106 S.Ct. 2705].) In Paralyzed Veterans, the United States Supreme Court applied a federal antidiscrimination statute requiring federal funding as an element and rejected the argument that money to airports required airlines to comply with the antidiscrimination statute because airports and airlines were “ ‘inextricably intertwined.’ ”[4] (477 U.S. at p. 610.) Comunidad’s showing that the programs were related is insufficient to raise a triable issue of material fact.
Amici curiae for Comunidad convincingly argue that “[n]o state-funded program should be able to evade the protections afforded by section 11135 simply by claiming an artificial distinction that assigns discriminatory aspects of a program to one bureaucratic unit in the regulatory structure.” For example, an entity may not channel funds “into programs or activities where discrimination does not exist and designate] their own freed-up funds for use in programs or activities where discrimination may exist.” (Foss v. City of Chicago (7th Cir. 1987) 817 F.2d 34, 36.) Such conduct would circumvent section 11135 and frustrate its purpose to prohibit discrimination in state-funded activities. (See Gov. Code, § 11139 [§ 11135 should not be interpreted in a manner that frustrates its purpose].) But here, as explained, the LEA and City necessarily are separate units. (No Wetlands, supra, 204 Cal.App.4th at p. 586.) The City’s land use approval process is separate from the LEA’s permitting process, as is compliance with CEQA. In this case, no argument could be made that the City funneled money to the LEA to avoid the antidiscrimination law.
*1130 The parties’ vigorous dispute regarding the implications of People v. Levinson (1984) 155 Cal.App.3d Supp. 13, 17 [203 Cal.Rptr. 426] is misplaced because Levinson is helpful only insofar as it instructs that “the apparent legislative purpose and intent in enacting Government Code section 11135 et seq. was to prohibit discriminatory treatment of any person on the basis of categories described in section 11135 only by those charged with effectuating programs or activities which receive directly or indirectly state support.” (Id. at p. Supp. 18.) Levinson's holding that a deaf plaintiff could not assert an antidiscrimination claim based on a municipal court’s failure to provide an interpreter for traffic schools indicates that the traffic school must be considered separately from the court but does not answer the relevant question here: whether funding to a city’s local enforcement agency for its waste management programs constitutes direct or indirect state support to the city. Our conclusion that funding to the LEA did not constitute funding to the City is limited to the unique nature of a local enforcement agency, as an agency required to issue its own permits and one that reports to CalRecycle, not the City.
2. CEQA Claims
The trial court abused its discretion in denying Comunidad’s motion for relief from dismissal. To explain this conclusion, we first summarize additional facts and procedure and then analyze the parties’ legal contentions.
A.
On June 10, 2010, Comunidad filed its complaint and petition for writ of mandate. On August 25, 2010, the parties stipulated to an extension of time for preparation and certification of the administrative record. The court issued an order requiring that the administrative record be certified no later than October 18, 2010.
On September 14, 2010, Waste Management moved to dismiss the CEQA claims on the ground that Comunidad failed to request a hearing within 90 days of filing the petition. Waste Management argued that Public Resources Code section 21167.4, subdivision (a) required Comunidad to file the request for a hearing on or before September 8, 2010. That statute provides: In any writ of mandate proceeding alleging noncompliance with CEQA, “the petitioner shall request a hearing within 90 days from the date of filing the petition or shall be subject to dismissal on the court’s own motion or on the motion of any party interested in the action or proceeding.” (Pub. Resources Code, § 21167.4.)
The next day Comunidad filed a request for a hearing. Comunidad also sought relief under Code of Civil Procedure section 473, which permits relief *1131 from dismissal under limited circumstances. A declaration from Comunidad’s lead attorney was attached to the motion for relief. Counsel averred that he inadvertently omitted the 90-day hearing request from his personal calendaring system. The mistake was compounded by a family illness that required counsel to leave the state from August 26, 2010, to September 8, 2010. In opposition to relief from dismissal, respondents argued that dismissal was mandatory and counsel’s neglect was not excusable.
On October 26, 2010, the City certified the record of the administrative proceedings.
The trial court denied Comunidad’s request for discretionary relief under Code of Civil Procedure 473, subdivision (b), which provides in pertinent part: “The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.”
The trial court concluded that failing to calendar a deadline on a litigation calendar was not excusable neglect. The trial court distinguished Nilsson v. City of Los Angeles (1967) 249 Cal.App.2d 976, 980 [58 Cal.Rptr. 20] (Nilsson) in which a calendaring error was found to warrant discretionary relief because the trial court concluded that electronic litigation calendar reminders are now ubiquitous and the failure to use one fell below the standard of care. On appeal, the parties dispute whether the trial court abused its discretion in denying Comunidad’s Code of Civil Procedure section 473 motion.
B.
Requesting a hearing under Public Resources Code section 21167.4 is a mandatory provision of CEQA. (Florentino v. City of Fresno (2007) 150 Cal.App.4th 596, 602-603 [59 Cal.Rptr.3d 30].) Comunidad filed the hearing request seven days late and only after respondents had moved to dismiss the CEQA claims.
The decision of whether to grant relief for the failure to file a timely hearing request implicates two competing public policies—the strong preference for a trial on the merits and the policy favoring expeditious review of CEQA challenges. The preference for trial on the merits is well established. (Zamora v. Clayborn Contracting Group, Inc. (2002) 28 Cal.4th 249, 255-256 [121 Cal.Rptr.2d 187, 47 P.3d 1056] [“ ‘It is well settled that appellate courts have always been and are favorably disposed toward such action upon the part of the trial courts as will permit, rather than prevent, the adjudication of *1132 legal controversies upon their merits.’ ”]; see Elkins v. Superior Court (2007) 41 Cal.4th 1337, 1364 [63 Cal.Rptr.3d 483, 163 P.3d 160] [“[e]ven under the fast track statute ... the preference for trying cases on the merits prevails”].) The requirement for expeditious review of CEQA claims also is well established. CEQA “contains a number of procedural provisions evidencing legislative intent that the public interest is not served unless CEQA challenges are promptly filed and diligently prosecuted.” (Nacimiento Regional Water Management Advisory Com. v. Monterey County Water Resources Agency (2004) 122 Cal.App.4th 961, 965 [18 Cal.Rptr.3d 921].) The Legislature intended that a CEQA challenge be heard within 210 days of commencement of the lawsuit. (Nacimiento, at p. 968.)
Notwithstanding the expedited nature of CEQA cases, CEQA does not categorically bar relief under Code of Civil Procedure section 473. (Miller v. City of Hermosa Beach (1993) 13 Cal.App.4th 1118, 1136 [17 Cal.Rptr.2d 408]; McCormick v. Board of Supervisors (1988) 198 Cal.App.3d 352, 359 [243 Cal.Rptr. 617].) Courts have afforded plaintiffs relief for the failure to properly request a hearing under Public Resources Code section 21167.4, but only when such failure constituted excusable error. (Miller v. City of Hermosa Beach, supra, at pp. 1136-1137 [granting relief where attorney requested hearing on preliminary matters but not on petition operating under a mistake of law]; McCormick v. Board of Supervisors, supra, at p. 363 [granting relief when request for hearing was made but no specific hearing date was requested].)
The test for discretionary relief under Code of Civil Procedure section 473 requires the party seeking relief to show excusable error. “ ‘A party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is imputed to his client and may not be offered by the latter as a basis for relief.’ [Citation.] In determining whether the attorney’s mistake or inadvertence was excusable, ‘the court inquires whether “a reasonably prudent person under the same or similar circumstances” might have made the same error. [’] [Citation.] In other words, the discretionary relief provision of section 473 only permits relief from attorney error ‘fairly imputable to the client, i.e., mistakes anyone could have made.’ [Citation.] ‘Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice.’ [Citation.] [][] The party seeking relief under section 473 must also be diligent. [Citation.] Thus, an application for relief must be made ‘within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken.’ [Citation.] [f] Where the mistake is excusable and the party seeking relief has been diligent, courts *1133 have often granted relief pursuant to the discretionary relief provision of section 473 if no prejudice to the opposing party will ensue. [Citations.]” (Zamora v. Claybom Contracting Group, Inc., supra, 28 Cal.4th at p. 258.)
It cannot be disputed that Comunidad’s counsel was diligent in prosecuting this case and the motion for relief was filed a week after the hearing request, well within a reasonable time. Nor can it reasonably be argued respondents would have suffered prejudice from Comunidad’s one-week delay in requesting a hearing as respondents successfully sought extensions to prepare the administrative record, which was not ready at the time Comunidad requested a hearing. The vigorously disputed issue is whether Comunidad’s counsel’s calendaring error constituted excusable neglect.
Almost a century ago, our Supreme Court found it obvious that entering the wrong date in an attorney’s calendar was sufficient to warrant relief under Code of Civil Procedure section 473. (Haviland. v. Southern California Edison Co. (1916) 172 Cal. 601, 605 [158 P. 328] (Haviland).) The court reasoned as follows: “It will hardly be claimed that the inadvertent entry of a wrong date in the book or journal in which defendant’s attorneys kept a record of the proceedings to be taken by them could not fairly have been held by the trial court to furnish sufficient ground for relief under the remedial provisions of section 473.” (Ibid.) Relying on Haviland and other cases, Nilsson concluded that the trial court abused its discretion in denying the plaintiff an opportunity to present a claim after the plaintiff’s counsel missed the deadline to file a claim for damages against a city as a result of a calendaring error. (Nilsson, supra, 249 Cal.App.2d at p. 983.) The court found it immaterial that the attorney did not show an established' office calendaring procedure. (Id. at pp. 982-983.) Similarly in Flores v. Board of Supervisors (1970) 13 Cal.App.3d 480, 483 [91 Cal.Rptr. 717], the court stated the rule that “ ‘[w]hile not every mistake of an attorney constitutes excusable neglect [citation], calendar errors by an attorney or a member of his staff are, under appropriate circumstances, excusable.’ ”
Our high court cited Nilsson favorably for the proposition that “[Code of Civil Procedure] [s]ection 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted.” (Elston v. City of Turlock (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713] (Elston), superseded by statute on another basis as described in Tackett v. City of Huntington Beach (1994) 22 Cal.App.4th 60, 64-65 [27 Cal.Rptr.2d 133].) The Elston court further explained that “[i]n such situations ‘very slight evidence will be required to justify a court in setting aside the default.’ ” (Elston, at p. 233.) In Elston, the court reversed an order denying relief under Code of Civil Procedure section 473 for the failure to timely deny requests for admission *1134 because when “an attorney states that he was unaware of his duty to appear or answer because his employees misplaced papers or misinformed him as to the relevant date, relief is routinely granted.” (Elston, at p. 234.) “Unless inexcusable neglect is clear, the policy favoring trial on the merits prevails. [Citation.] Doubts are resolved in favor of the application for relief from default. . . .” (Id. at p. 235.)
In contrast to Haviland and Elston, in Huh v. Wang the court found inexcusable the error in failing to oppose a motion for summary judgment which the attorney “blamed on attorney calendaring error.” (Huh v. Wang (2007) 158 Cal.App.4th 1406, 1412 [71 Cal.Rptr.3d 65] (Huh).) Counsel filed no written opposition to the summary judgment motion and did not appear at the hearing on the motion. (Ibid.) According to the declaration of the attorney seeking relief, the error occurred “ ‘because [counsel] was overwhelmed and disorganized,’ [and] he misfiled the summary judgment motion among ‘completed items’ and ‘did not calendar the hearing date or the due date of the opposition.’ ” (Id. at p. 1423.) The Huh court reasoned that the attorney’s declaration failed to show either a clerical mistake made by a clerk or legal assistant or extraordinary circumstances such as one or more attorneys leaving a law firm. (Id. at p. 1425.)
Huh relied on two cases for the proposition that a calendaring error was not excusable neglect, though neither directly supported that proposition. Huh cited Todd v. Thrifty Corp. (1995) 34 Cal.App.4th 986, 992 [40 Cal.Rptr.2d 727], in which the court found the dismissal was caused by the client, not by the attorney’s calendaring error, and therefore relief was unwarranted. “Because plaintiff’s counsel’s mistakes, if any, did not cause the dismissal of the lawsuit, the trial court abused its discretion in vacating the dismissal.” (Ibid., italics added.) Huh also cited the dissent in Yeap v. Leake (1997) 60 Cal.App.4th 591, 603 [70 Cal.Rptr.2d 680], which summarized the majority opinion as concluding a calendaring error is insufficient to warrant discretionary relief. But the majority in Yeap explained that it was not simply a calendaring error. Instead, “counsel’s failure to submit the request for trial de novo in a timely fashion was not excusable because, having already subjected his client to one calendaring error resulting in the missed arbitration, he should have moved quickly to undo the damage by requesting a trial de novo as soon as he became aware of the defense award rather than simply ordering his staff to calendar it.” (Yeap, at p. 598.) Thus, neither Todd nor Yeap stand for the categorical proposition that a calendaring error cannot constitute excusable neglect. And in Huh, the attorney made numerous errors that resulted in the absence of any opposition to a summary judgment motion either in writing or at the hearing.
Applying these cases here shows the trial court abused its discretion in denying Comunidad relief from default. The one-week delay in requesting a *1135 hearing was an isolated mistake in an otherwise vigorous and thorough presentation of Comunidad’s claims. In contrast to Huh, the lead attorney made a single calendaring error, not a series of errors resulting from disorganization. This isolated mistake is indistinguishable from ones that courts have regularly granted relief (Nilsson, supra, 249 Cal.App.2d at p. 983) and any doubt is to be resolved in favor of granting relief (Elston, supra, 38 Cal.3d at pp. 233-235).
Transporting a date from a timeline to a calendar is a clerical type mistake, not one involving professional skill. (See Garcia v. Hejmadi (1997) 58 Cal.App.4th 674, 682 [68 Cal.Rptr.2d 228] [distinguishing the mistakenly calendared date for a response to summary judgment from a response that was insufficient on the merits].) It is a mistake “ ‘anyone could have made’ ” (Zamora v. Clayborn Contracting Group, Inc., supra, 28 Cal.4th at p. 258), including a person with no special training or skill (Garcia, supra, at p. 684). That the error was made by an attorney not a clerk is inconsequential as even one made by a clerk is imputable to the attorney. (Hu v. Fang (2002) 104 Cal.App.4th 61, 64—65 [127 Cal.Rptr.2d 756].) Although electronic calendaring systems may be more prevalent than when the high court decided Haviland and Elston, the technology advancement does not change the nature of the error—the failure to enter the date on the calendar, an error that could occur regardless of the sophistication of the calendaring system.[5]
DISPOSITION
The order dismissing the CEQA claims is reversed. The summary adjudication of the section 11135 cause of action is affirmed. Each party to bear its own costs on appeal.
Bigelow, R J., concurred.

 The trial court granted summary judgment because the CEQA claims had been reversed. We affirm the summary adjudication (as opposed to the summary judgment) because we reverse the dismissal of the CEQA claims.

 California Code of Regulations, title 22, section 98101, subdivision (j) provides: “It is a discriminatory practice for a recipient, in carrying out any program or activity directly, or through contractual, licensing or other arrangements, on the basis of ethnic group identification, religion, age, sex, color, or a physical or mental disability . . . [f] . . . ffl (j) to make or permit selections of sites or locations of facilities: [][] (1) that have the purpose or effect of excluding persons from, denying them the benefits of, or otherwise subjecting them to discrimination under any program or activity . . . .”

 “The purpose of the LEA Grant Program is to provide grants to LEAs to carry out the solid waste facilities permit and inspection program.” (Cal. Code Regs., tit. 14, § 18090.0.) “LEA grant funds shall be used exclusively for the purpose of carrying out the approved solid waste facilities permit and inspection program.” (Cal. Code Regs., tit. 14, § 18090.3, subd. (a).) Interest on the grant funds “shall be used only for eligible grant related expenses or returned to the Board [(CalRecycle)].” (Cal. Code Regs., tit. 14, § 18093.1, subd. (b).)

 Congress subsequently passed a law indicating that “ ‘prohibitions of discrimination against handicapped individuals shall apply to air carriers.’ ” (Gilstrap v. United Air Lines (9th Cir. 2013) 709 F.3d 995, 1000.)

 Respondents argue that all counsel representing Comunidad were required to file declarations. Respondents cite no support for that proposition and it is not persuasive in this case because the lead attorney who filed a declaration was the attorney responsible for filing the request for a hearing and explaining why such request was untimely.
Respondents rely on Alliance for Protection of Auburn Community Environment v. County of Placer (2013) 215 Cal.App.4th 25 [154 Cal.Rptr.3d 653] to argue the court properly dismissed the CEQA claims. In that case, the plaintiffs missed the statute of limitations for filing a claim under CEQA. (Alliance, at p. 29.) Alliance held that Code of Civil Procedure section 473 does not apply to dismissals for failure to comply with a statute of limitations. (215 Cal.App.4th at pp. 31-32.) This case does not involve the failure to comply with a statute of limitations and respondents’ reliance on Alliance is therefore misplaced.